Decided 15 July, 1901.

## WESTERN SAVINGS CO. v. HOUSTON.

[65 Pac. 611.]

MEANING OF "PREMIUM" IN BUILDING AND LOAN ASSOCIATIONS.

1. As used in the law of building and loan associations, the word "premium" means a definite sum paid by the borrower to the association for the privilege of securing a loan; and, under that meaning of the word, an exaction by the association of a certain sum weekly on each share of stock held by the borrower, until the maturity of the stock, is not a premium at all, but is interest under another name: *Washington Invest. Assoc.* v. *Stanley*, 38 Or. ——, followed.

BUILDING ASSOCIATIONS — APPLICATION OF PAYMENTS TO LOAN.*

2. Where a loan by a building and loan association amounts to an ordinary loan, as distinguished from a loan by the association to a member, the borrower is entitled to have credited as payments on the loan all sums that he has turned in, regardless of the names by which they have been or may be called.

USURY† — BUILDING ASSOCIATION.

3. A contract for 6 per cent. on a loan and a so-called "premium" of a certain amount per share weekly until the stock of the association should mature, which amounts to 7.8 per cent. per annum on the loan, is usurious, for the total sum collected as rent for the loan exceeds 10 per cent., the highest lawful rate of interest in this state.

INTENT AN ELEMENT OF USURY.

4. To constitute usury there must have been an intent by the parties to violate the law; and in the absence of such an intention the penalty for usury should not be enforced.

From Baker: ROBERT EAKIN, Judge.

---

*NOTE.—See long note in 29 L. R. A. 120-137, collecting and arranging the authorities to 1895 on Right to Apply Payments Made on Stock in a Building and Loan Association upon a Mortgage Given for a Loan by the Same Member. See, also, *Pioneer Sav. & Loan Co.* v. *Cannon*, 33 L. R. A. 112, 54 Am. St. Rep. 858; *Post* v. *Mechanics' B. & L. Assoc.* 34 L. R. A. 201; *Hale* v. *Cairns*, 44 L. R. A. 261. *Curtis* v. *Granite State Prov. Assoc.*, 51 Am. St. Rep. at pp. 26-29, has a note on the Credit to be Given for Dues and Premiums.—REPORTER.

†NOTE.—See *Bank of New York* v. *Cook*, reported in 46 Am. St. Rep. 171, 189, and 29 L. R. A. 761, 768, with a note in each series on Lawfulness of Taking Interest in Advance.—REPORTER.

The defendants, A. A. Houston and wife, on May 31, 1893, executed to the Home Building & Loan Company, a domestic corporation, their promissory note, whereby they agreed to pay to the company, at the maturity of four shares of the capital stock thereof, of which Houston was the owner, $800, with interest from date until paid at the rate of six per cent. per annum, to secure which they at the same time executed and delivered to said company their mortgage upon certain real property in Baker County, whereby they covenanted and agreed to pay the said sum of $800 and interest, as provided in the note, and also all assessments, dues, fees, installments, and fines that should accrue under the by-laws of the company upon the said shares of capital stock. The shares were assigned as additional security. The Western Loan & Savings Company, having become the owner of the note and mortgage, instituted this foreclosure suit, and obtained a decree in its favor, but, not being satisfied with the amount awarded, appeals to this court.

                                                AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John B. Messick.*

For respondents there was a brief over the names of *Chas. F. Hyde* and *John L. Rand,* with an oral argument by *Mr. Rand.*

MR. JUSTICE WOLVERTON, after stating the case, delivered the opinion of the court.

1. The par value of each share of the capital stock of the Home Building & Loan Company is fixed at $200, and the subscriber to the stock is required by the by-laws to pay 25 cents weekly per share, until the dues and profits apportioned to his holding equal the par value. This process matures the stock, and thereupon the company is required

to pay the sum thus acquired to the holder. If a member becomes a borrower, he is required to pay interest upon the amount of the loan at the rate of six per cent. per annum, payable weekly, and, in addition thereto, a weekly premium upon each share of stock pledged or hypothecated as additional security for the loan until the same matures, the amount of which is fixed by a bidding for the loan among the members desiring to borrow. The mortgage is to continue in force until the weekly dues of 25 cents per share and the earnings credited shall equal the amount of $200 per share, and until all installments of interest, fines, and assessments thereon shall have been paid, at which time it is to be canceled, and the membership of the borrower to cease with reference to such shares: Article 5, § 1, and Article 7, §§ 6, 7, 13, of the by-laws of the company. It was held in *Washington Invest. Assoc.* v. *Stanley,* 38 Or. — (63 Pac. 489), that the act "To regulate the incorporation and business of building and loan and savings and loan associations doing a general business" (Laws 1895, p. 103), was adopted and designed for the regulation and protection of that particular class of societies and organizations known as "building and loan associations," and that "none other can claim the benefits and immunities accorded them, and these only when they pursue the especial business, and observe the exceptional rules, which characterize them, and make them peculiar, as compared with other business enterprises." An association having for its basis of operation a scheme foreign in any material particular from that which characterizes building and loan associations proper, cannot be classed with such associations, and therefore is without the pale of the law adopted for their government and protection.

It will be noted that by the by-laws the Home Building & Loan Company requires its borrowing members to pay a weekly premium upon each share of the capital stock forming the basis and controlling the amount of the loan, and

which are required to be assigned to the association as additional security therefor. This premium, though fixed by a bidding among the members of the concern, which determines the member's right to the loan, is required to be paid, like the interest, so long as the loan continues in force; in other words, until the stock matures, and, by its maturity, cancels the loan. We said in the case of *Washington Invest. Assoc.* v. *Stanley*, 38 Or. — (63 Pac. 489), "that the significance of the term 'premium,' within the meaning of the law of building and loan associations, is a bonus in reality, or a definite fixed sum or amount agreed upon between the contracting parties, the association and the borrower;" and we held that a six per cent. rate of premium fixed by the board, the payment of which, to be continued so long as the loan remained unpaid,—that is, until the stock matured, and the loan was thereby canceled,—was not such a premium as the law contemplated, and hence that, if such a premium, added to the interest, exceeded the lawful rate, it rendered the transaction usurious. Now, there is no practical distinction or difference between a premium fixed by a rate per cent. upon the amount of the loan and one which signifies a definite sum per share to be paid at stated periods while the loan continues in force. Neither constitute the definite or fixed sum contemplated by building associations, while both depend for the amount which the borrower will finally pay for the use of the money upon the amount he has borrowed and the time the loan shall continue in force. The proposition is readily demonstrable by the facts of this case. The defendant was the owner of four shares of the capital stock, representing a par value of $800. He borrowed an equivalent sum, and agreed to pay 30 cents a share premium per week, or 7.8 per cent. per annum upon the loan; and the payment, like the interest, or the rate per cent. premium, never ceases until the stock matures. To be exact, the bid for three shares was 30 cents per share, and for one 32

cents; but the payment has been made upon the 30-cent basis, and we may so treat it. Now, if the six per cent. interest is added to the 7.8 per cent. premium, the whole amounts to 13.8 per cent. per annum, which is largely above the legal rate of interest.

2. This feature of the scheme distinguishes the company from a legitimate building and loan association, and renders the transaction between the company and the borrower a loan merely, and the borrower is entitled to have all payments made, whether as premiums, dues, fines, or otherwise, credited as payments on the loan: *Hale* v. *Stenger,* 22 Wash. 699 (63 Pac. 554); *Hale* v. *Barker,* 129 Cal. 419 (62 Pac. 168); *Stevens* v. *Home Loan Assoc.* (Idaho), 51 Pac. 986; *Fidelity Sav. Assoc.* v. *Shea* (Idaho), 55 Pac. 1022; *Randall* v. *National Protective Union,* 42 Neb. 809 (60 N. W. 1019); *Strauss* v. *Carolina B. & L. Assoc.,* 117 N. C. 308 (30 L. R. A. 693, 53 Am. St. Rep. 585, 23 S. E. 450). The court below followed this rule, except that it considered the fines accumulated as penalties for failures in making prompt payments, and declined to give the defendants credit therefor; and this is as favorable to the appellant as it could ask under the law.

3. It is urged by counsel for appellant that the scheme of the Home Building & Loan Company contemplated that the loan should continue until the weekly dues, at the rate of 25 cents per share, should equal the principal of the loan, which would require 15 years and 20 weeks; that if, at the end of that time, the accumulated dividends standing to the credit of the borrower, estimated at ten per cent. per annum, upon the dues paid in, is deducted from the aggregate of the interest and premium, the result would show an average annual rate of interest less than the legal rate; consequently, the loan is not usurious. The idea that the loan should continue in force for that length of time is not deducible from the by-laws of the company. These seem to

represent that the stock would mature between eight and ten years, and the dividend is a matter dependent wholly upon the earnings of the company, and it is largely speculative; so there is no foundation in fact upon which to base the proposition. The defendants paid upon this loan of $800 something like $587, and a little over, during the six years that it ran prior to the time suit was instituted, which is admitted, and yet the appellant is asking for a decree for $960.90. There is something radically wrong in morals, as well as in law, with a scheme that produces such a result, and, of course, ought not to be upheld.

4. The promoters of the company were perhaps fully conversant with the result that would follow the adoption of such a scheme, but we may safely assume that a great majority of the stockholders and borrowers of the company had no conception of its vicious character, and honestly and conscientiously invested their means and borrowed from the funds without thought of transgressing the law. Aside from this, we have no evidence touching the real intent of the parties to the transaction with respect to the usurious feature; hence, the penalty for practicing usury should not be visited upon the plaintiff: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. — (63 Pac. 489). The decree of the court below must therefore be affirmed.        AFFIRMED.