Argued 27 November; decided 30 December, 1901.

## PACIFIC BUILDING COMPANY *v.* HILL.

[56 L. R. A. 163, 67 Pac. 103.]

BUILDING AND LOAN COMPANIES NOT BANKING CORPORATIONS.

1. A foreign corporation making loans upon security of real estate and pledges of its own stock is not a "banking corporation," within Hill's Ann. Laws, §§ 3276, 3277, requiring such a corporation to record a power of attorney in each county where it has a resident agent.

BUILDING AND LOAN COMPANY—USURIOUS CONTRACT.*

2. A contract by a borrower from a loan company under which he purchases a stated amount of stock in the company, at once assigns half of his purchase to the company absolutely, as a premium for the loan, and then pays the monthly assessments on his entire subscription, together with six per cent. interest on the amount borrowed, is usurious, since the interest and monthly assessments combined amount to more than ten per cent. on the loan, and no higher rate than ten per cent. can be directly or indirectly paid for the use of money in this state. A company doing a loan business on that plan is not a legitimate building and loan association, and all payments made by the borrower should go to the extinguishment of the loan with the interest that may have accumulated thereon at the agreed rate.

INTERPRETATION OF CONTRACT—PLACE OF PERFORMANCE.**

3. The general rule that a contract for the payment of money, entered into *bona fide* in one state, and made payable in another, will be construed and enforced according to the laws of the state where payable, is subject to the qualification that no state is bound to enforce in its courts any contract that is injurious to its public rights or offends its morals, or contravenes its public policy. For example, a contract made in Oregon between a citizen of Oregon and a foreign corporation doing business in Oregon, to be executed by the payment of money in California, but relating to Oregon land, the contract being usurious by the laws of Oregon, but valid under the laws of California, will not be construed in Oregon as a California contract and so enforced; but will rather be considered an Oregon contract to be governed by the Oregon laws. Particularly is this true where the surrounding circumstances justify the conclusion that the contract was drawn with the intention of evading the Oregon laws and court decisions.

---

*NOTE.—On the question of usury in this kind of a contract see *Gray* v. *Baltimore Build. & Loan Assoc.* 54 L. R. A. 217; *Floyd* v. *National Loan & Invest. Co.* 54 L. R. A. 536; *Iowa Sav. & Loan Assoc.* v. *Heidt,* 70 Am. St. Rep. 197, 43 L. R. A. 689; *Johnson* v. *National Build. & Loan Assoc.* 82 Am. St. Rep. 257, and *Howells* v. *Pacific St. Sav. & B. Co.* 81 Am. St. Rep. 659, with note, Unconscionable Contracts. In 14 Am. & Eng. Corp. Cas. 647, is a note, Usury in Contracts by Building and Loan Associations.—REPORTER.

**NOTE.—As to the construing of contracts made in one state, payable in a second state, but secured by a mortgage of land in the first state, see *Floyd* v. *National Loan & Invest. Co.* 54 L. R. A. 536, and particularly *McIlwaine* v. *Ellington,* 55 L. R. A. 933, with extensive note discussing whether a mortgage on real property should be tested by the same law as to interest and usury that applies to the personal obligation which it secures.—REPORTER.

From Linn: REUBEN P. BOISE, Judge.

The plaintiff, the Pacific States Savings, Loan and Building Association, is a private corporation, organized and having its principal place of business at San Francisco, California. On October 22, 1891, the defendant, J. L. Hill, made written application for membership in the company, and subscribed for seventy "A" shares of its capital stock. On the twenty-fourth the company issued its certificate for the desired shares, which was accepted with the conditions attached thereto, viz., the shareholder to pay sixty cents monthly upon each share, until matured or withdrawn, to the treasurer of the company in San Francisco, provided, however, the treasurer might appoint a collecting agent to receive and receipt for such monthly payments. Whenever the monthly payments made on any share, together with the profits, amounted to $100, such share should be deemed to have matured, and might be retired. The certificate bears date and purports to have been executed in San Francisco. On the back thereof appears an assignment of sixty shares of the stock to the company bearing date February 24, 1892. On the same day that he applied for membership, he also made application to the board of directors, at its home office, for a loan of $3,000 upon his bond and a mortgage to secure the same on realty situated in Albany, Oregon, in making which he represented that he resided at that place, and proposed using the money "in other business," and the venue of his verification is laid in Linn County, Oregon. Attached to the application is a certificate of J. L. Cowan, J. P. Galbraith, and A. O. Archibald, officers and directors of the company's local board at Albany, Oregon, addressed to the board of directors at its home office, recommending the loan. The maximum and minimum of premiums having been duly fixed by the board of directors, and there being more than two bidders for the loan, and Hill being the highest and best bidder, the board, by a resolution, granted his application December 15, 1891, whereby it was resolved, among other things, "that there be paid to the persons hereinafter named, members of

the company, on account of applications made and loans granted, the several sums set opposite their names, and that the president and secretary of the company execute an order on the California Title, Insurance & Trust Company, trustee, requiring it to make such payments: * * * Wallace H. Lee, Albany, Oregon, $800; Nicholas Portman, Sellwood, Oregon, $800. Application for loan of $3,500 to Dr. J. L. Hill, Albany, Oregon, was considered and granted for $3,000."

On February 9, 1892, Hill put in a written bid for a loan of $3,000, whereby he agreed to hold sixty shares of the stock and continue payment of installments thereon until maturity, or the loan was otherwise paid, and also to pay the company a bonus of thirty shares of such stock as a consideration for the loan, and on the sixteenth the company advanced and loaned to Hill the sum bid for upon terms and conditions stated in the bond executed by him and wife for the repayment of the same. To secure the bond, Hill and wife made, executed, and delivered to plaintiff a mortgage upon real estate in Albany. Both the bond and mortgage were dated and executed, and the mortgage acknowledged, in Linn County, Oregon. The conditions of the bond are that Hill shall pay to the company at the office of its treasurer in the City of San Francisco, on or before seven years from date, $3,000, and the full amount of the premium, if sixty shares have matured and become worth par, or, in case said stock has not matured, then so much of said premium as may have been earned at the time the whole of the sum advanced is repaid, together with interest thereon at the rate of six per cent. per annum from the sixteenth day of February, 1892, payable monthly; or shall pay the sum of $36 on the second Tuesday of each month as and for the monthly dues on sixty shares, the further sum of $15 per month as and for the monthly installments of interest on the loan at the rate of six per cent. per annum, and all fines and charges that may become due on such stock until fully matured; then, and in either case, the obligation to become void, otherwise to be and remain in full force and virtue; provided, however, that, in case default is made in any payment stipulated for,

the whole sum advanced, together with such proportion of the premium as has been earned, shall, at the election of the company, without notice, become due and payable, and the whole, less the withdrawal value of the sixty shares of capital stock, may be enforced and recovered, together with accrued interest, fines, and charges. There is a further stipulation that the whole of the premium shall be deemed to have been earned, due, and payable whenever the sixty shares of stock shall have matured, and one seventh of such premium shall be deemed to have been earned each year or fraction thereof elapsing after the date of the bond. The mortgage contains some additional stipulations, but default is dependent upon the conditions of the bond. The by-laws of the company provide, *inter alia*, that the stock shall be payable in monthly installments of fifty-two cents, and an expense fee of eight cents per share; that all members making applications for loans may have the privilege of offering premiums therefor within certain limits, the maximum and minimum to be fixed by the board of directors, and that in localities where not less than one hundred shares have been subscribed, and first payment made, a local board, consisting of not less than five members, each holding not less than ten shares, may be nominated by the agent of the company, and appointed by the board of directors, the duties of the members of the local board being to promote the increase of membership, urge the prompt payment of installments, and advise the board of directors in relation to loans in their locality.

This suit was instituted October 9, 1899, to foreclose the mortgage. The complaint sets out all the facts, stipulations, and obligations hereinbefore stated and recounted, and it is further alleged that the monthly payments on said sixty shares of stock agreed to be made by the defendants, from and inclusive of the second Tuesday of November, 1891, to the second Tuesday of August, 1899, amount to the sum of $3,348, of which $3,132 has been paid, leaving due from defendants to plaintiff $216, as and for the monthly dues on sixty shares of stock; that of the said $3,132 paid, $1,566 was paid to plain-

tiff in accordance with the bid for the loan, and, with the knowledge and consent of the defendants, applied to the payment of the monthly dues on the thirty shares of stock so bid as a premium, and $1,566 to the payment of the monthly dues of the said thirty shares of stock so pledged with plaintiff for the payment of said loan; that the monthly installments of interest on said loan at the rate of six per cent. per annum up to the second Tuesday of August, 1899, amount to $1,350, of which sum $1,260 has been paid, leaving due the sum of $90 on monthly installments of interest on the loan; that the said thirty shares of stock pledged for the payment of such loan are not fully paid in, nor have they become worth par, or any greater sum than $82.50 per share. The prayer is for a decree awarding to plaintiff the sum of $3,306, less $2,475, the present value of the shares pledged, and attorney's fees and costs. There was a demurrer to the complaint, which resulted in a dismissal of the suit, and plaintiff appeals.    AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. G. W. Allen,* and *George W. Wright* to this effect:

The plaintiff corporation is not included in the list mentioned in Sections 3276 and 3277 of Hill's Ann. Laws: *Oregon & Wash. L. & Invest. Co.* v. *Rathburn,* 5 Sawy. 32; *New Eng. Mtg. Sec. Co.* v. *Vader,* 28 Fed. 265; *Singer Mfg. Co.* v. *Graham,* 8 Or. 17, 21.

The law of the place of performance of a contract determines its validity, as well as the question of usury: Tiedman, Com. Paper, § 506; Rorer, Interstate Law, p. 69; *Hubble* v. *Morristown L. Improv. Co.* 95 Tenn. 590 (32 S. W. 965); *Ware* v. *Bankers L. & Invest. Co.* 95 Va. 680 (29 S. E. 745, 64 Am. St. Rep. 826); *National Mut. B. & L. Assoc.* v. *Ashworth,* 91 Va. 706 (22 S. E. 521); *Tobin* v. *McNab,* 53 S. C. 73 (30 S. E. 827); *United States S. & L. Co.* v. *Miller,* 47 S. W. 17; *Bigelow* v. *Burnham,* 83 Iowa, 120 (32 Am. St. Rep. 294, 49 N. W. 104); *Peck* v. *Mayo,* 14 Vt. 33 (39 Am. Dec. 205); *Healy* v. *Gorman,* 15 N. J. Law, 328; *Arnold* v. *Potter,* 22 Iowa, 194; *McAllister* v. *Smith,* 17 Ill. 328 (65 Am. Dec. 651); *Butler* v.

*Edgerton,* 15 Ind. 15; *Oregon & Wash. Invest. Co.* v. *Rathburn,* 5 Sawy. 35; *Hollis* v. *Covenant B. & L. Assoc.* 104 Ga. 318 (31 S. E. 215); *Parker* v. *Association,* 46 Ga. 166; *Butler* v. *Investment Co.* 94 Ga. 562; *Reeve* v. *Ladies' Bldg. Assoc.* 56 Ark. 335-377 (19 S. W. 917, 18 L. R. A. 129).

Again, a loan of the nature of the one from appellant to respondent is not usurious because the payments were made upon the stock debt and not upon the loan: *Building & Loan Assoc. of Dakota* v. *Price,* 169 U. S. 45 (18 Sup. Ct. 251); *Richard* v. *Southern B. & L. Assoc.* 49 La. An. 481 (21 South. 643); *Towle* v. *American B. L. & Invest. Soc.* 61 Fed. 446; *Strohm* v. *Franklin Sav. Fund & L. Assoc.* 115 Pa. St. 273; *Reeves* v. *Ladies' Bldg. Assoc.* 56 Ark. 335 (18 S. W. 917, 18 L. R. A. 129); *American Homestead Co.* v. *Linigan,* 46 La. An. 1118 (15 South. 369); *Pattison* v. *Albany B. & L. Assoc.* 63 Ga. 373; *Delano* v. *Wild,* 6 Allen, 1 (80 Am. Dec. 605); *Shannon* v. *Dunn,* 43 N. H. 194; *Hammerslough* v. *B. L. & Sav. Assoc.* 79 Mo. 80; *Clarksville B. & L. Assoc.* v. *Stephens,* 26 N. J. Eq. 351; *Cason* v. *Seldner,* 77 Va. 297; *Pioneer, etc. Loan Co.* v. *Cannon,* 96 Tenn. 599 (54 Am. St. Rep. 858); *Sullivan* v. *Jackson B. & L. Assoc.* 70 Miss. 94; *State* v. *Hombacker,* 42 N. J. Law, 635; *Watkins* v. *Workingmen's B. Assoc.* 97 Pa. St. 514; *New Jersey B. & L. Invest. Co.* v. *Bachelor,* 5 N. J. Eq. 600; Thornton & Blackledge, B. & L. Assoc. § 237; *Montgomery B. & L. Assoc.* v. *Robinson,* 69 Ala. 413; *Shannon* v. *Dunn,* 43 N. H. 194; *Winget* v. *Quincy B. & Homestead Assoc.* 128 Ill. 67; *Central B. & L. Assoc.* v. *Lampson,* 60 Minn. 422; *Concordia S. & Aid Assoc.* v. *Read,* 93 N. Y. 474; *Payne* v. *Freer et al.* 91 N. Y. 43 (43 Am. Rep. 640); *Holmes* v. *Smythe,* 100 Ill. 420; *Freeman* v. *Ottawa B. Assoc.* 114 Ill. 182; *Red Bank Mut. B. & L. Assoc.* v. *Patterson,* 27 N. J. Eq. 223; *Bosworth* v. *Sumpter R. E. Co.* 100 Ga. 60; *Livingston L. & B. Assoc.* v. *Drummond,* 49 Neb. 200; *Equitable B. & L. Assoc.* v. *Vance,* 49 S. C. 402 (27 S. E. 274, 29 S. E. 204); *McLaughlin* v. *Citizen's B. L. & Sav. Assoc.* 62 Ind. 264.

The following authorities also support appellant's view of the law that the contract sued on is not an Oregon contract:

Thornton & Blackledge, B. & L. Assoc. § 280; *National Mut. B. & L. Assoc.* v. *Ashworth,* 91 Va. 706 (22 S. E. 521) ; *Interstate S. & L. Assoc.* v. *Knapp,* 20 Wash. 225; *Pioneer, etc. L. Co.* v. *Cannon,* 96 Tenn. 599 (54 Am. St. Rep. 858) ; *Bennett* v. *Eastern B. & L. Assoc.* 117 Pa. St. 233 (55 Am. St. Rep. 723) ; *Equitable B. & L. Assoc.* v. *Hoffman,* 50 S. E. 303; *Freeie* v. *Fidelity Bldg. Union,* 166 Ill. 128 (57 Am. St. Rep. 123) ; *Farmers' & Mech. Sav. Co.* v. *Bazon,* 67 Ark. 252 (54 S. W. 339) ; *Equitable B. & L. Assoc.* v. *Vance,* 49 S. C. 402 (27 S. E. 274, 29 S. E. 204) ; *Association* v. *Besford,* 88 Fed. 7; *Pritchard* v. *Norton,* 106 U. S. 124 (1 Sup. Ct. 102) ; *Coglan* v. *South Carolina R. Co.* 142 U. S. 101 (12 Sup. Ct. 150) ; *Allen* v. *Hirsch,* 8 Or. 412, 421; *Crawford* v. *Linn County,* 11 Or. 482, 500; *International B. & L. Assoc.* v. *Wall,* 153 Ind. 554 (55 N. E. 431) ; *Southern B. & L. Assoc.* v. *Rector,* 98 Fed. 171-2-3; *Security Sav. & L. Assoc.* v. *Elbert,* 153 Ind. 198 (54 N. E. 753) ; *Vermont L. & Tr. Co.* v. *Whithed,* 2 N. Dak. 82-92-100 (49 N. W. 318) ; *Andruss* v. *People's B. L. & S. Assoc.* 94 Fed. 575 (36 C. C. A. 343).

There is no force in the contention that the mortgage is a local contract and cannot be affected by the laws of California or the law of the place of payment of the note which the mortgage secures. While it is true that the mortgage must be enforced by the method provided by the Oregon law it is neither good law nor sound reasoning to insist that the mortgage given to secure the note cannot be enforced when the note itself is valid: *Pritchard* v. *Norton,* 106 U. S. 129 (1 Sup. Ct. 102) ; *Latham* v. *Washington,* 77 N. C. 145; *Dygert* v. *Vermont L. & T. Co.* 94 Fed. 913.

As the amended complaint shows upon its face that the stock subscribed for by Hill has not become worth par, it cannot be claimed on a general demurrer that Hill has paid off his obligation to the company, for his contract was that he would pay monthly dues on his stock until it should become worth $100 per share or to be otherwise paid: *Towle* v. *American B. L. & Invest. Soc.* 61 Fed. 446; *Strohen* v. *Franklin Sav. F. & L. Assoc.* 115 Pa. St. 273 (8 Atl. 343) ; *Reeve* v. *Ladies' B.*

*Assoc.* 56 Ark. 335-337 (18 L. R. A. 129, 19 S. W. 917); *People's B. & L. Assoc.* v. *Furey,* 47 N. J. Eq. 410-413; *State of Washington B. & L. Assoc.* v. *Hombacker,* 42 N. J. Law, 635-638; Endlich, Bldg. Assoc. §§ 452-456; Thornton & Blackledge, B. & L. Assoc. § 162.

For respondent there was an oral argument by *Messrs. N. M. Newport,* and *Henry H. Hewitt,* with a brief over the names of *Weatherford & Wyatt, Hewitt & Sox,* and *Cannon & Newport,* to this effect:

The contract set out in the complaint is to be enforced under the laws of Oregon, and therefore the question as to whether or not the contract is usurious must be determined by the laws of Oregon: *Harman* v. *Hart* (Tenn.), 53 S. W. 310; *People's B. L. & Sav. Assoc.* v. *Kidder,* 9 Kan. App. 385 (58 Pac. 798); *Fidelity Sav. Assoc.* v. *Shea* (Idaho), 55 Pac. 1022, 1025; *Building & L. Assoc. of Dakota* v. *Griffin,* 90 Tex. 480 (39 S. W. 656); *Meroney* v. *Atlanta B. & L. Assoc.* 116 N. C. 882 (47 Am. St. Rep. 841, 21 S. E. 924); *Bank of Ogden* v. *Davidson,* 18 Or. 57, 70 (22 Pac. 517); *Vermont L. & T. Co.* v. *Hoffman,* 37 L. R. A. 509 (49 Pac. 314, 319).

Where a borrower subscribed for stock in a loan association merely to obtain a loan and is required to make monthly payments upon such shares, and by the terms of the contract the maturity of the shares extinguishes the debt and cancels the stock, the borrower is a stockholder in fiction and not in fact, and the actual relation between the parties is only that of creditor and debtor, and the transaction is purely one of borrowing and lending: *Herbert* v. *Kenton, B. & S. Assoc.* 74 Ky. (11 Bush) 296; *Gordon* v. *Assoc.* 75 Ky. (12 Bush) 110 (23 Am. St. Rep. 713); *Henderson B. & L. Assoc.* v. *Johnson,* 88 Ky. 191 (10 S. W. 787); *Southern B. & L. Assoc.* v. *Harris,* 98 Ky. 41 (32 S. W. 261, 3 L. R. A. 289); *United States Sav. & L. Assoc.* v. *Scott.* 98 Ky. 695 (34 S. W. 235); *Simpson* v. *Kentucky Citizen's B. & L. Assoc.* 101 Ky. 496 (41 S. W. 570); *Fidelity Sav. Assoc.* v. *Shea* (Idaho), 55 Pac. 1022; *Hale* v.

*Stenger,* 22 Wash. 699 (61 Pac. 156); *Meroney* v. *Atlanta B. & L. Assoc.* 116 N. C. 882 (21 S. E. 924, 47 Am. St. Rep. 841); *People's B. L. & Sav. Assoc.* v. *Kidder,* 9 Kan. App. 385 (58 Pac. 798).

Payments made to a building and loan association in excess of the rate allowed by law upon a loan are usurious: *Southern B. & L. Assoc.* v. *Atkinson,* 20 Tex. Civ. App. 516 (50 S. W. 170); *People's B. L. & S. Assoc.* v. *Keller,* 20 Tex. Civ. App. 616 (50 S. W. 183); *International B. & L. Assoc.* v. *Biering,* 86 Tex. 476 (25 S. W. 622); *James* v. *James, Trustee,* 21 Ky. Law Rep. 1401 (55 S. W. 193); *Stevens* v. *Home Sav. & L. Assoc.* (Idaho), 51 Pac. 779, 986; *People's B. & L. Assoc.* v. *Kidder,* 9 Kan. App. 385 (58 Pac. 798); *National B. & L. Assoc.* v. *Gallagher,* 21 Ky. Law Rep. 1140 (54 S. W. 209); *Fidelity Sav. Assoc.* v. *Shea* (Idaho), 55 Pac. 1022; *McCauley* v. *Workman's B. & L. Assoc.* 97 Tenn. 421 (35 L. R. A. 244, 56 Am. St. Rep. 813, 37 S. W. 212); *Building & L. Assoc. of Dakota* v. *Griffin,* 90 Tex. 480 (39 S. W. 656); *Meroney* v. *Atlanta B. & L. Assoc.* 116 N. C. 882 (21 S. E. 924, 47 Am. St. Rep. 841); *Building & L. Assoc. of Dakota* v. *Walker,* 59 Neb. 456 (81 N. W. 308); *Interstate S. & L. Assoc.* v. *Strine,* 58 Neb. 133 (78 N. W. 377); *Matthews* v. *Interstate B. & L. Assoc.* 50 S. W. 604; *Milnor* v. *People's B. & L. Assoc.* (Ky.) 48 S. W. 732; *People's B. & L. Assoc.* v. *Rising* (Tex. Civ. App.) 34 S. W. 148; *Rhodes* v. *Missouri S. & L. Co.* 173 Ill. 621; *Hollowell* v. *Southern B. & L. Assoc.* 120 N. C. 286 (26 S. E. 781); *Smith* v. *Old Dom. B. & L. Assoc.* 119 N. C. 249 (26 S. E. 40; *Herbert* v. *Kenton B. & S. Assoc.* 74 Ky. (11 Bush) 296; *Henderson B. & L. Assoc.* v. *Johnson,* 88 Ky. 191 (3 L. R. A. 289, 10 S. W. 787); *Waverly Mut. L. & B. Assoc.* v. *Buck,* 64 Md. 338 (1 Atl. 561); *Mechanics & Farmers' B. & L. Assoc.* v. *Dorsey,* 15 S. C. 462; *Martin* v. *Nashville B. Assoc.* 42 Tenn. (2 Cold.) 418.

The contract is unconscionable and for that reason the court will not enforce it according to the construction contended for by appellant: *Mills* v. *Salisbury B. & L. Assoc.* 75 N. C. 292; *Southern B. & L. Assoc.* v. *Harris,* 98 Ky. 41 (32 S. W. 261);

*Randall* v. *National B. L. & P. Union,* 43 Neb. 876 (62 N. W. 252); *Rowland* v. *Old Dominion B. & L. Assoc.* 116 N. C. 877 (22 S. E. 8).

The contract set out in the complaint shows a scheme to avoid the usuary laws of the state: *Cotton States B. Co.* v. *Reily,* 50 S. W. 961; *Howells* v. *Pacific States S. L. & B. Co.* 21 Utah, 45 (81 Am. St. Rep. 659, 60 Pac. 1025); *Meroney* v. *Atlanta B. & L. Assoc.* 116 N. C. 882 (21 S. E. 924, 47 Am. St. Rep. 841).

The statute of 1891, p. 131, contemplates bidding in order to establish a right to a preference in obtaining a loan. Therefore a loan made under a by-law that fixes a minimum premium is usurious, as such by-law curtails the freedom of the bidder and is not permissible under the statutes: *McCauley* v. *Workingmen's B. & S. Assoc.* 97 Tenn. 421 (37 S. W. 212, 35 L. R. A. 244, 56 Am. St. Rep. 813); *Bates* v. *People's S. & L. Assoc.* 42 Ohio St. 655; *State* v. *Greenville B. & L. Assoc.* 29 Ohio St. 92; *Stiles' Appeal,* 95 Pa. St. 122; *Post v. Mechanics' B. & L. Assoc.* 97 Tenn. 408 (37 S. W. 216, 34 L. R. A. 201).

The contract being one of loan, in a procedure to foreclose the mortgage by which the loan is secured the borrower is entitled to credit for all payments made whether characterized as premium, dues, interest, fines, or otherwise, and to have the account adjusted on the principle of partial payments: *Safety B. & L. Co.* v. *Ecklar* (Ky.), 50 S. W. 50; *Graham* v. *Housebuilding & L. Assoc.* (Tenn.) 52 S. W. 1011; *Stevens* v. *Home Sav. & L. Assoc.* (Idaho) 51 Pac. 986; *People's B. & L. Assoc.* v. *Kidder,* 9 Kan. App. 385 (58 Pac. 798); *Hale* v. *Stenger,* 22 Wash. 699 (61 Pac. 156); *North Texas S. & B. Assoc.* v. *Hay,* 23 Tex. Civ. App. 98 (56 S. W. 580); *Sawtelle* v. *North Amer. S. L. & Co.* 14 Utah, 443 (48 Pac. 211); *People's B. L. & S. Assoc.* v. *Fowble,* 17 Utah, 122 (53 Pac. 999); *Hale* v. *Thomas,* 20 Utah, 426 (59 Pac. 241); *Brown* v. *Archer,* 62 Mo. App. 277; *Houser* v. *Herman B. Assoc.* 41 Pa. St. 478; *Dowell* v. *Safety B. & L. Co.* 21 Ky. Law Rep. 1267 (54 S. W. 845).

40 OR.—19.

When the complaint shows that the cause of action is based upon a usurious contract the principal of which has been fully paid, a general demurrer to such complaint should be sustained: *Stevens* v. *Home Sav. & L Assoc.* (Idaho) 51 Pac. 779; *Interstate S. & L. Assoc.* v. *Cairns,* 16 Wash. 215 (47 Pac. 509).

Mr. Justice Wolverton, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. It will be noted that these transactions of which the complaint speaks were had, and the loan consummated, before the passage of the act of 1895, regulating the incorporation and business of building and loan and savings and loan associations doing a general business, and it is claimed that the loan was lawfully negotiated, although the company had not at the time executed and acknowledged a power of attorney, appointing a citizen and resident of the state as its attorney, with authority to accept, and upon whom lawful service may be made of, writs and process necessary to give jurisdiction of the incorporation to any of the courts of the state, as prescribed by Hill's Ann. Laws, §§ 3276, 3277. To overcome this position, it is maintained, upon the other side, that the plaintiff is a banking concern. We do not think enough appears by the record by which it can be so classified. It is, rather, to be denominated a loan company or association, and not such an institution as comes within the purview of the statute cited: *Singer Mfg. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572); *Commercial Bank* v. *Sherman,* 28 Or. 573 (43 Pac. 658, 52 Am. St. Rep. 811); *Oregon & Wash. Invest. Co.* v. *Rathburn,* 5 Sawy. 32 (Fed. Cas. No. 10,555). It was, therefore, lawful, without the observance of the conditions there prescribed, for it to do or transact business in this state. It must be conceded that it is beyond the power of the legislature, by retrospective act, to impair, in any degree, the obligations of a contract; nor are we advised of any provision of the act of 1895 that impinges upon this principle. Apparently, the act was drafted

with a view to avoid such a contingency, as witness the declarations of section 7 relating to usury.

2. Plaintiff insists that it is a legitimate building and loan or savings and loan association, organized and operating under the special plan or system that characterizes those peculiar organizations or associations. But, to show that it is not, we will advert to one feature of its plan of operation. It requires a bidding to fix the amount of the premium, which, no doubt, is legitimate. But it exacts of the purchaser of the loan, or the borrower, that he bid a certain amount of his stock (in this case, fifty per cent.), which is to be assigned to the company, and henceforth to become its property, the borrower being required, notwithstanding, to pay the monthly dues or premium upon the assigned stock until it is matured, which must, from the nature of the obligation, be to the time of the maturity of his own stock, when the loan is extinguished,—that is, the full time the loan remains unpaid in any part. Note its present operation. Defendant assigned to plaintiff thirty of his sixty shares of capital stock absolutely, as a premium bid in consideration of obtaining the loan of $3,000, and pledged the balance of thirty shares as security for its payment. He was required to pay sixty cents per month denominated "dues" to the company, not only upon the thirty shares pledged, but also upon the thirty assigned to the company absolutely, being $36 per month; but only one half, or $18 per month, went to the reduction or the extinguishment of his loan, or was available to him for the accumulation of profits in the concern, the other half being a sheer contribution to the company. Aside from this, defendant was required to pay six per cent. on the amount of the loan, or $15 per month, as interest. The result is that defendant was paying to the company $18 per month, aside from the $15 called interest, that is, $33 per month, or 13.20 per cent., for the use of the $3,000 advanced; so that ultimately the defendant paid in monthly installments towards said loan, during the time from November, 1891, to August, 1899, the sum of $4,392, and yet plaintiff insists that the obligation is not discharged by $831, leaving nearly a third

of it for which a decree is demanded. The scheme is a vicious one, and foreign to the operations of a legitimate building and loan or savings and loan association, and falls within the denunciation of this court: *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319 (84 Am. St. Rep. 793, 63 Pac. 489); *Western Sav. Co.* v. *Houston,* 38 Or. 377 (14 Am. & Eng. Corp. Cas. N. S. 710, 84 Am. St. Rep. 808, 65 Pac. 611). The pretended measure adopted for the bidding of a premium, and the regulation for the payment of dues on the stock assigned to the company therefor, is a subtle method for collecting interest by another name, and constitutes a shift or device for the cover of usury. This renders the transaction a loan merely, and the payments made, under whatsoever denomination, should go to its extinguishment, along with the interest reserved, under the holding in *Western Sav. Co.* v. *Houston,* 38 Or. 377 (84 Am. St. Rep. 808, 65 Pac. 611, 14 Am. & Eng. Corp. Cas. N. S. 710). These payments are more than sufficient to discharge the same in full, unless it be true, as contended by plaintiff, that, the contract being for money payable in the State of California, it is solvable by the laws of that state, where parties are permitted to contract for any rate of interest they may desire.

3. It is sound doctrine, no doubt, that a contract for the payment of money entered into *bona fide* in one place, and made payable in another, is to be construed, governed, and enforced according to the laws of the state or country where payable. But it is without application where there is a purpose manifest to avoid the laws of usury. Mr. Chief Justice TANEY, in a discussion of the subject, in *Andrews* v. *Pond,* 38 U. S. (13 Pet.) 65, 78, says: ''The general principle in relation to contracts made in one place, to be executed in another, is well settled. They are to be governed by the law of the place of performance; and if the interest allowed by the laws of the place of performance is higher than that permitted at the place of contract, the parties may stipulate for the higher interest, without incurring the penalties of usury; but,'' continues the eminent jurist in another paragraph, ''the same

rule cannot be applied to contracts forbidden by its (the place ·
of contract) laws, and designed to evade them.  In such cases,
the legal consequences of such an agreement must be decided
by the law of the place where the contract was made.  If void
there, it is void everywhere.''  So, in *Miller* v. *Tiffany*, 68 U.
S. (1 Wall.) 298, 310, Mr. Justice SWAYNE, after stating the
general rule and observing that the converse is also true, says:
''These rules are subject to the qualification that the parties
acted in good faith, and that the form of the transaction is not
adopted to disguise its real character.  The validity of the
contract is determined by the law of the place where it is en-
tered into.''  And in *De Wolf* v. *Johnson*, 23 U. S. (10 Wheat.)
367, it was held that the *lex loci contractus* must govern in a
question of usury.  See, also, *Holmes* v. *Manning* (Mass.), 19
N. E. 25.  Usury is a moral taint wherever it exists, and no
subterfuge should be permitted to conceal it from the eyes of
the law.  This, it is said, is the substance of all the cases.  As a
principle of international jurisprudence, no state is bound or
ought to enforce or hold valid in its courts of justice any con-
tract which is injurious to its public rights, offends its morals,
contravenes its policy, or violates a public law:  *Dickinson*
v. *Edwards*, 77 N. Y. 573, 576 (33 Am. Rep. 671);  2 Kent,
Comm. p. 458; *Varnum* v. *Camp*, 13 N. J. Law, 326 (25 Am.
Dec. 476).  It is scarcely controverted that plaintiff was doing
business in this state.  Indeed the fact is apparent from the
minutes of plaintiff's board of directors, set out in the com-
plaint, showing that loans were negotiated with persons resi-
dent within the state other than the defendant.  Besides, plain-
tiff had a local advisory board, composed of its stockholders
and members, and an agent in Albany, so that beyond question
it was transacting business here, and was subject to the ob-
servance of the public laws and policy of the state, as much as
any citizen thereof.  Certainly, international or interstate
comity does not go so far as to require the enforcement of a
contract in favor of a nonresident doing business here that the
courts of the state would not enforce in favor of one of its own
citizens.

Now we have seen that the plaintiff, although pretending to be operating as a building and loan association, had adopted a plan or scheme not in accord with the true principles and purposes of that character of associations, with the manifest design of collecting interest by another name, and by deception to induce the payment of an unusual and unlawful rate. It is also manifest that the defendant Hill applied to become a member of the company, not that he especially desired to be a member and stockholder thereof, but solely for the purpose of obtaining a loan under the conditions offered. So it is perfectly reasonable and altogether natural to conclude that the stipulation for payment in San Francisco was introduced into the contract to avoid the usury laws of this state. A contract of the kind consummated with such a purpose, is an evasion of our laws, and contrary to the declared policy of the state, and cannot receive the sanction of this court. But, aside from this, there is very little to distinguish the case from that of *Washington Invest. Assoc.* v. *Stanley,* 38 Or. 319 (84 Am. St. Rep. 793, 63 Pac. 489). There the association had conformed to the act of 1895, and appointed a resident attorney, become duly licensed to contract business in the state, and had a solicitor residing where the loan was negotiated. In the present case, the plaintiff was transacting business here, as it had a right to do, but it had an agent and local board here composed of its resident members, appointed under the by-laws and usages of the association, whose functions it was to promote the membership thereof, and approve its loans. The bond and mortgage were executed by citizens of the state, realty situated within the state was hypothecated as security, and the money used in business here; so we must conclude that, notwithstanding the express stipulation that the bond was payable in San Francisco, the contract is solvable by the laws of this jurisdiction. We have not overlooked the cases of *Bedford* v. *Eastern Bldg. & L. Assoc.* 181 U. S. 227 (21 Sup. Ct. 597), and *Dygert* v. *Vermont L. & Trust Co.* 37 C. C. A. 389 (94 Fed. 913), but in each of these cases the *bona fides* of the transaction seems to have been unquestioned, and the point of controversy was re-

solved to the general proposition that a contract made in one state, which, by its terms, is payable in another, is to be controlled by the laws of the state where payable.

These considerations affirm the decree of the court below, and it is so ordered. AFFIRMED.

Decided 16 August, 1901.