Argued 20 April, decided 16 May, 1904.

### EGAN *v.* NORTH AMERICAN LOAN CO.

[76 Pac. 774, 77 Pac. 392.]

INTERSTATE COMITY — RIGHTS OF RECEIVER.*

1. The comity between states will usually sustain an application by a receiver appointed by a court of one state for possession of the debtor's property in another state, where no rights of citizens of the latter jurisdiction will be thereby prejudiced.

---

* NOTE.—See notes on rights of foreign receivers in 23 L. R. A. 52 and 846; 18 Am. St. Rep. 344; 36 Am. St. Rep. 905.—REPORTER.

SUIT TO REMOVE CLOUD—PERMISSION TO SUE FOREIGN RECEIVER.

2. A receiver in another state, who is not actually or constructively in possession of certain real property in the state where a suit is brought to quiet title thereto, may be made a party to such suit without permission of the court in which he was appointed: *Thompson* v. *Holladay*, 15 Or. 34, distinguished.

WHO MAY SUE TO CANCEL BUILDING AND LOAN MORTGAGE—ESTOPPEL.

3. A grantee of real property subject to an usurious mortgage who did not assume the debt, but merely took the land subject to it, may plead usury against the mortgagee as to all payments that have been made: *Irwin* v. *Washington Loan Assoc.* 42 Or. 105, distinguished.

OPENING DEFAULT—TENDERING PROPOSED ANSWER.

4. An application to set aside an order of default, for whatever reason it may have been entered, must be supported by an answer showing a meritorious defense, a statement that such a defense exists is not sufficient.

RIGHT TO CANCELLATION OF USURIOUS MORTGAGE.

5. Where the payments made on an usurious loan, applied at the legal rate of interest, amount to the sum justly due, the borrower is entitled to have the payments properly applied and the debt and the mortgage securing it canceled.

SERVICE OF COST BILLS IN SUPREME COURT.

6. Section 568, B. & C. Comp., as amended by Laws 1903, p. 209, § 1, relating to the allowance of disbursements in the supreme court, requires that the statement of the items claimed shall be served on the adverse party, whether he has appeared or not, if filed more than five days after the rendition of the judgment or decree—if filed within that time the statement need not be served on any one: *McFarlane* v. *McFarlane*, 43 Or. 477, and *Anderson* v. *Adams*, 44 Or. 529, distinguished.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is a motion to set aside a decree. The facts are that on August 24, 1891, B. F. Egan, plaintiff's husband, being the owner of lots 6 and 7 in block 24 in North Portland, formerly Albina, secured from the defendant the North American Savings, Loan & Building Company, a corporation existing under the laws of Minnesota, a loan of $1,200, and gave to it his promissory note as evidence thereof, with monthly interest at the rate of 6 per cent per annum, payable after three and before nine years, upon the maturity of thirty-six shares of its capital stock, for which he subscribed. The note was secured by a mortgage on these lots, executed by Egan and his wife, and by an assignment of twenty-four shares of such stock, the remaining shares having been transferred to the corporation as a bonus to secure a loan. Egan made fifty-one monthly payments of $27.60 each, being sixty cents per share on

the stock for which he subscribed, and $6 on account of the interest on the loan; and on November 1, 1895, he executed a deed of the mortgaged premises to the plaintiff as a gift, and to avoid the expense of administration in anticipation of his death, which occurred about January, 1896. The plaintiff, after securing the title to the lots, also paid nineteen like monthly installments, and thereafter, insisting that the debt was discharged, instituted a suit in the circuit court for Multnomah County to cancel the mortgage, joining Edward B. Graves as a defendant, alleging that on account of the insolvency of the corporation he had been appointed its receiver by the District Court of the Second Judicial District for Ramsey County, Minnesota, and that the mortgage had been assigned to him. The defendants not being residents of, nor found within, this State, the summons was, by order of the court, served by publication, and, due proof thereof having been made, a decree was entered April 21, 1902, canceling the mortgage. Before the expiration of a year from the rendition of the decree, Graves moved the court to set aside the default, and to permit an answer to be filed, supporting his motion by affidavits tending to show that he had no knowledge that the suit was pending until after the decree was rendered, and that by mistake and excusable neglect the defendants had been deprived of their day in court. He also tendered an answer which denied some of the averments of the complaint, admitted the payments claimed to have been made by plaintiff and her husband on account of the loan, but alleged that, according to the method adopted by the corporation of applying the money so received, the debt had been reduced only to the extent of $122.40, leaving due thereon $1,097.60, and prayed that the mortgage might be foreclosed, and the lots sold to satisfy such liability. The motion was denied, and the defendants appeal.                                    AFFIRMED.

For appellant there was a brief over the name of *Platt & Platt*, with an oral argument by *Mr. Harrison G. Platt*.

For respondent there was a brief and an oral argument by *Mr. Michael G. Munly*.

Mr. Chief Justice Moore, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. It is contended by defendants' counsel that plaintiff, having alleged that Graves was appointed receiver of the defendant corporation, neglected to aver that she had secured leave of court to institute proceedings against him, and, this being so, the complaint failed to state facts sufficient to constitute a cause of suit, and an error was committed in overruling the motion. Our statute, in defining the office of a receiver and prescribing the duties devolving upon him; is as follows: "A receiver is a person appointed by a court or judicial officer to take charge of property during the pendency of a civil action, suit, or proceeding, or upon a judgment, decree, or order therein, and to manage and dispose of it as the court or officer may direct": B. & C. Comp. § 1080. It is the court, by its agent, the receiver, that takes possession of the property in controversy *pendente lite*, or after judgment or decree, for the benefit of the persons entitled thereto, when it does not deem it proper that either party should have control thereof: Beach, Receivers (Alderson's ed.), § 2. "The possession of the receiver," says Mr. Justice Baldwin, in *Beverley* v. *Brooke*, 4 Grat. 187, "is that of the court, and any attempt to disturb it without leave first specially granted will be a contempt, and may be punished as such." Mr. Justice Thayer, in *Thompson* v. *Holladay*, 15 Or. 34 (14 Pac. 725), in speaking of the right of creditors to institute actions against a receiver, says: "They may bring and maintain suits against the receiver in his official capacity almost as a matter of course, and obtain judgments against him

binding the estate, subject to the equities of other parties interested in it. They are compelled, it is true, to obtain leave of the court having custody of the property to bring their suits against the receiver, but that requirement is imposed to prevent vexation and confusion; and they may maintain suits against the debtor in any forum as a matter of right, but the judgment recovered in such case will not bind the receiver, or compel him to do anything in aid of its enforcement." Further in the opinion it is observed: "There is no principle better established than that, where property in litigation is taken into the custody of the court, through the intervention of a receiver, a party interested cannot go into another forum and establish any claim to it. The court which first takes cognizance of the controversy is entitled to retain jurisdiction to the end of the litigation, and, incidentally, to take possession and control of the subject-matter of the suit, to the exclusion of all interference from other courts of concurrent jurisdiction. The principle grows out of a spirit of comity, which has the highest aim for the public good, and without the observance of which conflicts of a serious nature would be likely to arise." The several states of the Union are independent, and, as to each other, foreign, governments, from which it results that the laws of one state and the judgments and decrees of courts rendered in pursuance thereof have no binding force or effect beyond its borders: 23 Am. & Eng. Enc. Law, (2 ed.) 1108.

Where no vested or accrued rights of the citizens of a state have intervened, the principle of comity prevails by which a receiver appointed by a court of another state may, by appropriate proceedings, be permitted to take possession of a debtor's property in the latter state: *Gilman* v. *Ketcham* 84 Wis. 60 (54 N. W. 395, 23 L. R. A. 52, 36 Am. St. Rep. 899); *Hunt* v. *Columbian Ins. Co.* 55 Me. 290 (92 Am. Dec. 592). This is usually accomplished by

an ancillary suit in which a foreign receiver is permitted by a court of another state to take possession of property involved in the litigation that is situated within its jurisdiction, thereby investing him with the measure of power delegated: *Rust* v. *United Waterworks Co.* 70 Fed. 129 (17 C. C. A. 16). No rule of comity, however, requires a court in which a debtor's property is situated to abdicate its jurisdiction of the *res* when the rights of its citizens would be thereby prejudiced: *City of Fort Dodge* v. *Minneapolis & St. L. Ry. Co.* 87 Iowa, 389 (54 N. W. 243); *Holbrook* v. *Ford*, 153 Ill. 633 (39 N. E. 1091, 27 L. R. A: 324, 46 Am. St. Rep. 917); nor can a foreign receiver, without the court's permission, sue to recover the possession of such property: *Booth* v. *Clark*, 58 U. S. (17 How.) 321. In deciding that case Mr. Justice WAYNE, in speaking of a receiver, said: "If he seeks to be recognized in another jurisdiction, it is to take the fund there out of it, without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks, for his faithful conduct and official accountability. All that could be done upon such an application from a receiver, according to chancery practice, would be to transfer him from the locality of his appointment to that where he asks to be recognized, for the execution of his trust in the last, under the coercive ability of that court; and that it would be difficult to do, where it may be asked to be done, without the court exercising its province to determine whether the suitor, or another person within its jurisdiction, was the proper person to act as receiver." But, as was said by Mr. Justice DANFORTH in *Hibernia Nat. Bank* v. *Lacombe*, 84 N. Y. 367 (38 Am. Rep. 518), in speaking of the right of commissioners, appointed by a court in Louisiana, to enforce in New York the payment of a claim of their insolvent debtor: "Once properly in

court and accepted as a suitor, neither the law nor court administering the law will admit any distinction between the citizens of its own state and that of another." If, under such rule of comity, Graves had been appointed or recognized as the receiver of the defendant corporation by a court of this State, so that leave to prosecute the suit could have been secured, a different question might be presented, and a variant rule applied.

2. The suit was instituted to cancel a lien on the ground that the debt secured thereby was paid, which was tantamount to the removal of a cloud from the title to real property, requiring a trial of that cause in the forum where the premises were situated. The rules of law do not impose upon a party the performance of vain things, and, this being so, no necessity existed for applying to the Minnesota court for leave to institute a suit in the courts of this State, in which the right involved could only be enforced. The receiver, Graves, undoubtedly was the holder of the promissory note given by Egan, and was also the assignee of the mortgage, which was an incident thereof; but he was not in, nor entitled to, the possession of the mortgaged lots, and a complaint in a suit against a receiver to recover real property which does not show that he is in possession thereof is not subject to demurrer: *Fort Wayne, etc. R. Co.* v. *Mellett*, 92 Ind. 535. We think the complaint stated facts sufficient to entitle plaintiff to the relief demanded, for, Graves not being in the actual or constructive possession of the property, it was not *in custodia legis*, and hence it was not necessary to secure leave of court to institute the suit, or to allege such fact in the complaint.

3. It is maintained by defendants' counsel that, the mortgaged premises having been conveyed to the plaintiff, she is not entitled to an application of the payments made by her husband, except in the manner prescribed by the

rules of the corporation, thus showing that there is due it the sum claimed; and for this reason an error was committed in refusing to set aside the decree. In *Irwin* v. *Washington Loan Assoc.* 42 Or. 105 (71 Pac. 142), it was held that a purchaser of real property subject to an usurious mortgage, who had assumed and agreed to pay the debt as a part of the purchase price, could not plead the usury in a suit to foreclose the lien. The reason for this rule rests upon the theory that the mortgagor puts into the hands of the purchaser a fund with which to pay the debt, and it would be fraud to permit the latter to avoid his covenant and escape liability on account of usury when the mortgagor had waived his personal privilege, or was unwilling to make such a defense. This rule, however, can have no application to the case at bar, for plaintiff was a party to the mortgage, and the premises were conveyed to her by her husband in anticipation of his death, to avoid the expense of an administration upon his estate, and not for the purpose of creating a fund for the payment of the debt, thereby entitling her to an application of the payments made by the mortgagors in satisfaction of their obligation : *Epping* v. *Washington Invest. Assoc.* 44 Or. 116 (74 Pac. 923).

4. It is insisted by defendants' counsel that, their clients having, within the time prescribed by the statute (B. & C. Comp. § 103), moved the court to set aside the decree on the ground that it was taken against them through their mistake, inadvertence, surprise, and excusable neglect, and having submitted conclusive evidence thereof, the court erred in denying the motion. Before the receiver was entitled to have the decree set aside for the reasons assigned, it was incumbent upon him to tender an answer showing a meritorious defense: *Mayer* v. *Mayer*, 27 Or. 133 (39 Pac. 1002).

5. It will be remembered that such pleading admitted the payments claimed to have been made by the plaintiff in her complaint; and a monthly application thereof in discharge of the debt, allowing interest on the several new principals at the rate of 6 per cent per annum, shows that prior to the conveyance of the premises to her, the entire sum and interest due the corporation had been paid by her husband, notwithstanding which she made nineteen further payments; thereby showing that the answer tendered does not afford a meritorious defense: *Washington Invest. Assoc.* v. *Stanley*, 38 Or. 319 (63 Pac. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793); *Western Sav. Co.* v. *Houston*, 38 Or. 377 (65 Pac. 611); *Pacific Build. Co.* v. *Hill*, 40 Or. 280 (67 Pac. 103, 56 L. R. A. 163, 91 Am. St. Rep. 477.)

For these reasons no error was committed in refusing to open the decree, and the order of the court in this respect is affirmed.                    AFFIRMED.

---

Decided 5 July, 1904.

## ON MOTION TO STRIKE COST BILL.

PER CURIAM. The respondent, who was successful in this court, filed her statement of disbursements on May 21, the decree having been rendered May 16, and the appellants now move to strike it out because it was not served upon them.

6. The question involved depends upon a construction of Section 568, B. & C. Comp., as amended by the legislative assembly in 1903: Laws 1903, p. 209. It now reads: "No disbursements shall be allowed to any party, unless he shall serve on such adverse party or parties as are entitled to notice by law, or rule of the court, and file with the clerk of such court within five days after the rendition of the judgment or decree, a statement, with proof of

service thereof, if notice to the adverse party is required, indorsed thereon or attached. * * Such statement of disbursements may be filed with the clerk at any time after said five days, but not later than the first day of the next regular term of court occurring after the expiration of said five days; but in such case, such statement must be served on the adverse party or parties whether he or they shall have appeared or not." It is not entirely apparent what was intended by this statute, but from a survey of it in its entirety it seems to us that it is susceptible of no other construction than that service of the statement is not required to be made upon the adverse or any party if filed within five days after the rendition of the judgment or decree. It shall be served upon such adverse party or parties as are entitled to notice by law or rule of the court. There is no law, so far as we are advised, or rule of this court, entitling any adverse party to notice of a proceeding of this nature. The term "notice" is employed merely in the abstract, and what notice is intended, whether of a motion or of appeal or otherwise, is not specified. The last clause of the above excerpt would seem to suggest that the statute has reference to a notice of appeal, as only such party or parties as have appeared in the action or suit are entitled to such notice, and that the statement should be served upon such as have appeared. But the statute does not say so, and we are not permitted to read into it anything of the kind for the purpose of construction. The statute has used the term in a general sense, and if there was a law or rule of the court requiring notice of all papers filed, or other proceedings, to be served upon certain adverse parties, then a notice of filing such a paper as a statement of disbursements would be included, but, as it concerns this court, there is no such law or rule. So we conclude, as above suggested, that a statement of disbursements, if filed with the clerk of this court within five days

after the rendition of judgment or decree, is not required to be served upon any adverse party. If not filed within five days, the statute requires its service upon the adverse party, whether he has appeared or not. The cases of *Mc-Farlane* v. *McFarlane*, 43 Or. 447 (73 Pac. 203, 75 Pac. 139), and *Anderson* v. *Adams*, 44 Or. 529 (76 Pac. 16), are not in conflict with this holding. The former decides that a statement of disbursements filed after the first day of the succeeding term of this court occurring more than five days after the rendition of the judgment or decree could not be allowed, and the latter case simply holds that a statement of costs filed after five days, without service upon the adverse party, will be stricken from the record. The motion to strike out the statement here will therefore be denied, and it is so ordered.     MOTION OVERRULED.

---

Decided 16 May, rehearing denied 5 July, 1904.