Argued October 4, affirmed October 16, 1923.

## McCRACKEN *v.* McCRACKEN et al.

(219 Pac. 196.)

**Wills—Testator Held to have ''Testamentary Capacity'' Within Requirement of Statute.**

1. Where the record showed that testator knew and understood the business in which he was engaged, recognized the objects of his bounty, and comprehended the property of which he was making disposition he had testamentary capacity, within Section 10092, Or. L., permitting every person of sound mind of twenty-one years or over to make a will.

---

1. What constitutes testamentary capacity or incapacity, see notes in 27 L. R. A. (N. S.) 2; L. R. A. 1915A, 444.

Evidence—Expert Witness Testifying on Hypothesis cannot Give Opinion on Testator's Capacity.

2. In a contest of a will, expert testimony of physicians giving their opinion, based upon hypothesis, that testator was incapable of making a will, was not admissible, because it invaded the province of the trier of the facts.

Wills—Execution Held in Compliance With Statute.

3. Testimony *held* to show that Section 10095, Or. L., requiring that every will should be in writing, signed by the testator, or by some other person under his direction, in his presence, and attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator, was complied with.

Wills—Testimony of Those Present at Execution of Will Most to be Relied upon.

4. Evidence of subscribing witnesses, and of others, who were present at the execution of a will, regarding the mental capacity of testator, are most to be relied upon.

From Washington: George B. Ragley, Judge.

Department 1.

'Affirmed.

For appellant there was a brief and oral arguments by *Mr. D. D. Bump* and *Mr. M. B. Bump.*

For respondents there was a brief and oral arguments by *Mr. L. L. Langley* and *Miss Manche I. Langley.*

BURNETT, J.—The plaintiff contests the last will and testament of Robert McCracken, deceased. The complaint avers in substance that the contestant is the adopted son of the decedent by virtue of certain proceedings had for the purpose in the State of Iowa in the year 1889, which are set out at great length in the complaint, together with the statutes of that state affecting the subject. The pleading goes on to

2. Admissibility of opinion evidence, based on hypothesis, as to testamentary capacity, see note in 39 L. R. A. 313.

4. Weight of testimony of subscribing witness as to competency of testator, see notes in 77 Am. St. Rep. 459; 6 L. R. A. (N. S.) 575.

state that a document alleged to be the last will of the decedent, dated January 1, 1920, was admitted to probate in Washington County of this state and proven in common form; but that at the time of the alleged execution of the same by the decedent he had not testamentary capacity, being wholly unable, on account of his then feeble mental condition, to comprehend the business in which he was engaged, or the proper objects of his bounty. It was further urged as a ground of attack upon the will that it was brought about by the improper and undue influence exercised by the testator's wife and her daughter by a former marriage, and the husband of the latter. The document leaves to the plaintiff, styled therein, "My adopted son, Samuel McCracken," the sum of $5 and gives the rest of his property to the wife for her life, remainder over to her daughter, before mentioned.

1. We may concede, for the purposes of this opinion, but without deciding, that the plaintiff was the legally adopted son of the testator and as such, entitled to stand in the shoes of an actual son. Approaching the principal question in the case, that of the testamentary capacity of the testator, we have the testimony of the attendant physician and the nurse who were present at his last sickness and death, who say that his mind was clear at the time he asked the physician to prepare his will and gave him directions about its terms; that the latter, acting as scribe, wrote the will, read it to the testator who was propped up in bed at the time, and that the deceased signed his own name thereto assisted by the physician steadying his arm and that he and the nurse signed their names thereto as witnesses in the presence of each other and in the presence of

the testator. This occurred about 10 o'clock in the evening of December 31, 1919, and the testator died between 2 and 3 o'clock the following morning, or about four or five hours after the execution of the will. The wife of the testator and the husband of her daughter testified substantially in accord with the subscribing witnesses.

2. An attempt was made to overcome the evidentiary showing of the proponent by expert testimony of physicians who gave their opinion on the hypothesis that death occurred by apoplexy, that he was incapable of making a will. That was the direct question to be determined by the trier of facts. Such testimony was an attempt to invade the province of the one called upon to find the facts and was not admissible: *Lehman* v. *Knott,* 100 Or. 59 (196 Pac. 476); *Patterson* v. *Howe,* 102 Or. 275 (202 Pac. 225).

3, 4. The decedent was about sixty-five years of age. The formula for the execution of wills is prescribed thus:

"Every person of twenty-one years of age and upwards, of sound mind, may by last will devise all his estate, real and personal, saving to the widow her dower." Or. L., § 10092, "Every will shall be in writing signed by the testator or by some other person under his direction in his presence and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." Or. L., § 10095.

The testimony shows that this rule was observed in every particular. Giving to the expert testimony all the effect that is claimed for it, still it cannot counterbalance the direct testimony of the disinterested witnesses who were present and participated in the transaction. They speak from actual knowledge, adducing primary testimony, while the experts speak

upon theory and hypothesis, giving their opinions which, as a rule, are admitted to throw light upon and illustrate the principal matter in dispute. As to the effect to be given to the testimony of subscribing witnesses, the doctrine was enunciated thus by Mr. Chief Justice LORD in *Clark* v. *Ellis,* 9 Or. 128:

"The point of time, then, to be considered at which the capacity of the testator is to be tested, is the time when the will was executed. This is the important epoch, and Judge WASHINGTON says: 'The evidence of the attesting witnesses and next to them of those who were present at the execution, all other things being equal, are most to be relied upon.' In the case before us, none other than the attesting witnesses were present at the execution, and they have testified to the soundness of his mind at that time. The evidence of the attorney who drew the will according to his instructions, and the positive and uncontradicted testimony of the subscribing witnesses to the will, of the soundness of the testator's mind at the time the will was executed, establish beyond doubt that the testator was rational, and did know and understand what he was doing at the time the will was executed."

By the preponderance of the testimony, at least, the record shows that the testator had sufficient mental capacity to know and understand the business in which he was engaged, to recognize the objects of his bounty and to comprehend the property of which he was making disposition. This constitutes testamentary capacity and the will must be sustained, even conceding that the plaintiff stands in the position of actual son of the testator. There is no testimony showing the exercise of any undue influence over the testator. In this view of the case, it is unnecessary to decide about the regularity of the adoption.

The decree of the County Court and of the Circuit Court on appeal therefrom are affirmed and the will in question established as the last will and testament of the deceased.                                    Affirmed.

McBride, C. J., and Harris and Rand, JJ., concur.