Motion to strike respondents' additional abstract allowed November 19, 1929; argued March 19; affirmed December 30, 1930

In Re De Lin's Estate

RICHARDS et al. *v.* DE LIN et al.

(282 P. 119, 294 P. 600)

*Dan J. Kenney* and *Wm. A. Robbins,* both of Portland, for appellants.

*Wm. A. Munly* and *E. B. Seabrook,* both of Portland, for respondents.

PER CURIAM. Appellants move to strike respondent's additional abstract of record from the files for the reason that it contains only the opinion of the judge of the trial court together with findings of fact and conclusions of law.

Section 405, Or. L., as amended by chapter 134, General Laws of Oregon for 1927, provides that:

" *   *   * findings of fact and conclusions of law shall be separate from the decree, and shall be filed with the clerk and incorporated in and constitute a part of the judgment roll of said cause; and such findings of fact shall have the same force and effect and be equally conclusive as the verdict of a jury in an action at law, except on appeal to the supreme court the cause shall be tried anew without reference to such findings."

Under rule 6 of this court, a printed abstract shall contain:

"A copy of so much of the record as may be necessary to a full understanding of the questions presented for decision."

■■ The additional abstract of record in question contains nothing essential to an understanding of the questions presented on appeal. It is an unnecessary expense. The written opinion of the lower court is often helpful, but it has no place in an abstract of record. It more properly belongs in a brief to be considered in the nature of an argument. Neither do we consider findings of fact or conclusions of law essential in an equitable proceeding. What we have said has no

application where findings are made in a law action. In such cases the findings should be set out in the abstract of record.

The motion to strike additional abstract of record is allowed.

ON THE MERITS
(294 P. 600)

COSHOW, C. J. One of the attorneys for appellants stated in his oral argument as follows: "As to the law of the case, gentlemen, there is no argument between the attorneys on the other side and myself."

The evidence in behalf of the proponents of the will discloses that respondent Mary Eames is a sister of the testate and wrote the will at her dictation. After writing the will in pencil she read it to her sister, the testate, who said it was as she wanted it. Testate then directed her sister to copy it in ink, which she did, adding to the pencil copy at the request of testate the words: "I declare this to be my last will and testament."

As a witness respondent Mary Eames testified on cross-examination:

"Q. It (the will) was not prepared before?

"A. Absolutely; just the minute I got through writing that (the pencil draft of the will), I went to the table and wrote the ink one. There wasn't five minutes elapsed. Just as quick as I read that lead pencil copy to her, I copied it in ink, *and then read it to her,*—I handed it to her to read it, and she says, 'You read it to me.' "

The witness, Mrs. Eames, also testified that she read the will to testate after she had copied it in ink. She was very positive in her testimony that she wrote the will word for word as her sister, the testate dictated.

Contestants are the sons of a deceased sister of testate and were each left the sum of $100 only. There is undisputed testimony of several witnesses that testate had expressed her intention of not leaving any property to her said nephews, the contestants.

The principal contention on behalf of contestants is that at the time the will was written testate had not sufficient mental capacity to dictate the will. There is in the record the testimony of three disinterested witnesses to the effect that testate was bright mentally and appeared to be in full possession of her mental faculties at the time the will was executed; that she was strong intellectually, possessed a strong will and could not be influenced against her wishes by any person.

In addition to the disinterested witnesses there is the testimony of Mrs. Eames, Mrs. Oatman, and Mrs. Lasher, all beneficiaries under the will to the effect that at and about the time the will was dated testate was mentally as sound as theretofore. Testate had been a school teacher for a number of years in the city of Portland. She had retired from teaching about six years prior to her death, which occurred a little less than four days after she executed her will. Her retirement was caused by her ill health. But up to two or three days prior to the date of the will she was up and around and did her own housework. She died of pulmonary tuberculosis.

The evidence on behalf of contestants is contradictory of the evidence adduced by proponents. After

carefully weighing all of the evidence we are persuaded that the weight of the evidence is decidedly in favor of the proponents. We cannot give to expert testimony based on hypothetical questions the same weight we do the direct and positive testimony of the doctor who treated testate. The latter has a great advantage over the former. Dr. Smith, who did see her, examined her, conversed with her, is very positive in his testimony that the testate was mentally competent. He had every opportunity of observing the testate and would have discovered her mental incapacity if she had been mentally unsound.

■ Testate had been careful about her business, kept strict account of her investments and only two or three days prior to making her will had reviewed her records and expressed an intention of investing some money in another business enterprise. In view of this evidence, which we think is overwhelmingly in favor of proponents, we hold that testate was competent to frame the will: *McCracken v. McCracken,* 109 Or. 83, 86 (219 P. 196), from which we take this language:

"An attempt was made to overcome the evidentiary showing of the proponent by expert testimony of physicians who gave their opinion on the hypothesis that death occurred by apoplexy, that he was incapable of making a will. That was the direct question to be determined by the trier of facts. Such testimony was an attempt to invade the province of the one called upon to find the facts and was not admissible: *Lehman v. Knott,* 100 Or. 59 (196 P. 476); *Patterson v. Howe,* 102 Or. 275 (202 P. 225)."

The property belonged to the testate and she had a right to dispose of it as she pleased. The will is not an unnatural one. From its contents it does not appear to be contrary to natural justice. Her only brother,

Wm. De Lin, and only surviving sister, the said Mary Eames, were treated exactly the same in the will. The contestants are her nephews, are in middle life and neither has legal nor moral claim on testate's bounty. There was no reasonable ground for contesting the will. The only suspicious circumstance shown is that one of the beneficiaries wrote the will. That circumstance has been satisfactorily explained.

■ "The usual objection to paying costs from an estate in a proceeding to contest a will is where the contestant is unsuccessful, and such a provision *might tend to promote litigation*": In re Johnson's Estate, 100 Or. 142, 163 (196 P. 385, 1115).

Respondents are entitled to costs. Decree affirmed.

RAND and ROSSMAN, JJ., concur.

KELLY, J., did not participate in this opinion.