Motion to strike parts of respondents' abstract of record allowed September 14, 1932; argued June 29; affirmed July 18; rehearing denied September 12, 1933

# PRUDENTIAL SAVINGS & LOAN ASS'N ET AL. v. STEVENS ET AL.

(14 P. (2d) 296, 23 P. (2d) 901)

*B. S. Martin, L. R. Martin,* and *George A. Rhoten,* all of Salem, for the motion.

*J. H. Kelley,* of Portland, opposed.

■ BEAN, C. J. Defendants and appellants move to strike from the files of this court a portion of respondents' additional abstract of record, consisting of the original answer filed in the cause. After the demurrer to defendants' original answer had been overruled, defendants filed an amended answer to plaintiff's complaint; therefore the original answer became defunct and was no longer any part of the record. From a cursory examination the contents appear to be about the same as the amended answer, which is set out in a different form. It is not a part of the judgment roll and not material to the issues in the case and will be stricken.

■ Appellants also move to strike out the plaintiff's demurrer to defendants' original answer, which was overruled by the court. Therefore no question is raised in regard to the same. It is stricken.

■ Appellants also move to strike out that part of the additional abstract designated as the opinions of the lower court for the reason that they were never filed with the clerk of the lower court and constitute no part of the transcript or record in this case. The opinions of the lower court, if presented, should be a part of the brief and are not properly a part of the abstract of record. The written opinion of the lower court is quite often helpful, but it is held in *Richards v. De Lin*, 135 Or. 8, 9 (282 P. 119, 294 P. 600), that it has no place in the abstract of record.

In view of the fact that we desire to refer to the opinions of the learned trial judges in the court below, permission will be given to the respondent to refer to the opinions contained in the additional abstract as a part of its brief. In any event, no costs will be allowed for printing such opinions in the additional abstract

in excess of seven pages, which may be considered a part of the brief, and the balance of the additional abstract will be stricken from the record.

It is so ordered.

On the Merits

(23 P. (2d) 901)

B. S. *Martin and George A. Rhoten,* both of Salem (L. R. Martin, of Salem, on the brief), for appellants.

J. H. *Kelley,* of Portland (E. M. Page, of Salem, on the brief), for respondents.

I. N. *Smith* and *James H. Ganoe,* both of Portland, amici curiae.

CAMPBELL, J. Plaintiff is a corporation organized under the laws of the state of Oregon as a building and loan association. Defendants Ralph J. Stevens and Emma Stevens are husband and wife and will hereinafter be referred to as the borrowers.

On November 7, 1928, the borrowers negotiated from plaintiff a loan of $1,550. To this sum was added $916 designated as interest. The borrowers were required to execute their promissory note for $2,466.

This whole amount was to be paid in 120 equal installments of $20.55 each, payable on the fifteenth day of each month commencing with November 15, 1928, each installment being a payment of the $1,550 principal and the interest calculated monthly on the unpaid balances of the principal. This note did not specify at what rate of interest the calculation was to be made. The note was secured by a mortgage on lot 5, block 2, Kay's Addition to Salem, Marion county, Oregon, according to the duly recorded plat thereof on file and of record in volume 11, page 33, Record of Town Plats, Marion county, Oregon.

As a condition precedent to the making of the loan, the borrowers were required to subscribe for 16 shares of the capital stock of plaintiff of the par value of $100 each and immediately assign the same to plaintiff as additional security. On this stock the borrowers were charged a membership fee of $32, or two dollars for each share subscribed. The borrowers were also charged a premium of two per cent on the principal of the loan. The borrowers were also charged an inspection fee of $10, the cost of recording the mortgage and the expense of securing title insurance, all of which sums were retained by plaintiff and deducted from the principal sum borrowed.

The loan was what is usually referred to as a building loan. That is, the borrowers were having a house built on the above described land and the money thus borrowed was to finance the construction thereof.

The money was advanced as the building progressed until the sum of $1,249.75 had been paid on the building in addition to the premium, membership fee, examination fee and recording fee, making a total amount of $1,322.75, leaving a balance of $227.25 of the prin-

cipal sum named in the note in the hands of plaintiff. Plaintiff claims that at the time the borrowers executed the note and mortgage, it "ear-marked" and set aside for the use of the borrowers, the full amount of the principal sum called for in the application for the loan. Thereafter, the borrowers having failed to pay the installments as they became due, this balance, which had not been advanced, was used to pay said delinquent installments and credited on the note to principal and interest, leaving a balance claimed by plaintiff, at the time of the commencement of this suit, of $1,453.26, for which sum with interest at 10 per cent per annum from November 15, 1929, plaintiff prays judgment against the borrowers, and foreclosure of the mortgage, and in case the property does not sell for sufficient to satisfy the judgment, a deficiency judgment against the borrowers.

Defendant L. R. Martin became the successor in interest to the borrowers.

The defendants Stevens and L. R. Martin filed an answer to plaintiff's complaint in which they alleged facts not materially different from the foregoing statement, and, in addition thereto, alleged that the note, on its face, was usurious; that the charge of the $32 membership fee and the premium of $31 collected, was a subterfuge to enable plaintiff to collect excessive rates of interest. The other defendants did not answer.

The circuit court found for plaintiff in the full amount claimed, foreclosed the mortgage, made provision for a deficiency judgment and allowed $130 attorney fees. From this decree, the answering defendants appeal.

There is practically no dispute as to the facts. The real difference between the parties is as to the law applicable thereto.

■ The sum of $916 as interest on the full amount the borrowers wished to obtain, to wit: $1,550, calculated on the monthly unpaid balances extended over the full 120 months period, is greater than a rate of 10 per cent per annum. Payments of $20.25 per month on the principal sum and interest at 10 per cent per annum on the unpaid balances, calculated monthly in strict accordance with the terms of the note, would pay the principal sum, less $2.07 in 118 monthly payments. This would leave the sum of $38.48 over and above the amount of interest that 10 per cent would bring in the 120 months, calculated on the unpaid monthly balances.

"The rate of interest in this state shall be six per centum per annum, and no more, and shall be payable in the following cases, to wit: * * *

5. On money due or to become due when there is a contract to pay interest and no rate specified; provided, however, that on contracts interest up to the rate of ten per centum per annum may be charged by express agreement of the parties, and no more". Oregon Code 1930, § 57-1201.

"No person, corporation or association * * * shall directly or indirectly receive in money * * * any greater sum or value for the loan or use of money, than in this chapter prescribed". § 57-1202, supra.

The note and mortgage therefore would appear to be usurious.

The question now arises, what should the court do with the note and mortgage under consideration?

An usurious rate of interest usually works a forfeiture of the loan to the school fund of the state. § 57-1203, supra.

The law in effect, regarding premiums charged by a building and loan association, at the time the loan was made, reads as follows:

"It shall be lawful for cooperative corporations engaged in the business of loaning their own money only to their own stockholders, and only in proportion to the amount of stock held by such stockholders, in case there are two or more applicants for the money offered for loan, to make the loan to such stockholder or stockholders as shall offer the highest premium of any nature for such loan, and the giving and receiving of such premium shall not be regarded as contrary to the laws of the state in regard to the rate of interest on money, but only the means of determining which of two or more stockholders equally entitled to such loan shall receive the same". § 25-331, supra.

"Any premium which has heretofore or which shall hereafter be taken for loans or fines imposed for the nonpayment of dues, made by any association governed by this act, shall not be considered or treated as interest, nor render such association amenable to the laws relating to usury". § 25-308, supra.

■ The intention of the law was that when there was not enough money to supply all the stockholders who wished to borrow, then those desiring to borrow could bid against each other as to the amount of premium each was willing to pay. The law permitted the borrower to fix the amount of premium rather than the lender and when a premium was so fixed, then it "should not be regarded as contrary to the laws of the state in regard to the rate of interest on money".

■■ The method adopted by plaintiff, in the instant case, was to fix an arbitrary sum as a premium which the borrower had to pay regardless of the demand for the "money offered for loan". The record fails to disclose that there was any competition among borrowers. The plaintiff had no lawful right to exact from the borrowers the 2 per cent premium. The amount of said premium ($31.00) should be credited on the

amount of the loan actually received by or applied to the use and benefit of the borrowers.

■ We are of the opinion that the law, as it existed at the time the loan was made, permitted plaintiff to charge the membership fee, the inspection fee, the cost of title insurance and the cost of recording the instruments.

■ The borrowers applied for a loan of $1,550. Of this amount, $227.25 was not received by them nor was it advanced in any manner for their use and benefit, but was retained in the hands of plaintiff. When plaintiff was apprised that this sum was not to be used for the purpose for which the loan was made, it should have credited it on the amount then due, allowing 6 per cent per annum for the time it had been reserved and not retain and apply it on installments thereafter falling due.

"But, notwithstanding the contract appears to be usurious on its face, and the natural inference to be drawn therefrom is that the parties intended the result of their own acts, yet there is another element which must attend the practice of usury. It must be with a corrupt intent, which means that the parties must have knowingly agreed upon a rate of interest greater than that allowed by law: 27 Am. & Eng. Enc. Law (1 ed.), 925; Balfour v. Davis, 14 Or. 47 (12 Pac. 89); Burwell v. Burgwyn, 100 N. C. 389 (6 S. E. 409). But, where they have acted under an honest belief that the stipulated rate was recoverable under the law, in which they were mistaken, it has been held that the penalties of usury would not be enforced; * * *". Washington Investment Association v. Stanley, 38 Or. 319 (63 P. 489, 58 L. R. A. 816, 84 Am. St. Rep. 793); Western Savings Co. v. Houston, 38 Or. 377 (65 P. 611); Pacific Building Co. v. Hill, 40 Or. 280 (67 P. 103, 56 L. R. A. 163, 91 Am. St. Rep. 477); Fidelity Security Corporation v. Brugman, 137 Or. 38 (1 P. (2d) 131, 75 A. L. R. 1333).

The plaintiff, through its directors, might have been mistaken as to the fact that the amount which they added to the loan in a lump sum as interest might not have exceeded the legal rate of 10 per centum per annum. In addition to that, the stockholders, on whom the punishment of forfeiture would fall, may have been innocent of any knowledge regarding the method adopted in the instant transaction. Theoretically, the stockholders of a building and loan association are responsible for those selected as directors. From a practical standpoint, the stockholders have about as much say over the management and control of the policies of the company as a "jackrabbit would have at a convention of coyotes". Some building and loan associations are under a "management of, by, and for the officials" thereof.

█ The mortgage should be foreclosed in the sum actually received or advanced for the use and benefit of the borrowers less any sums actually repaid by them together with 6 per cent interest from the date of loan, with $130 attorney fees.

█ The note or contract does not specify the rate of interest on the loan but fixes the interest at a lump sum. It is true that the contract provides in default of the payments of the installments the amount due in that event should bear interest at the rate of 10 per cent, but having already added more than 10 per cent per annum to the principal this provision should not be enforced as it would be compounding the interest. This being a contract calling for the payment of interest without specifying the rate, falls within subsection 5 of § 57-1201, supra.

There are several other propositions of law discussed in the briefs of counsel, but, taking the view we do of the main question, they become immaterial.

The decree of the circuit court will be affirmed as thus modified and the cause remanded and a decree entered in conformity with this opinion. Neither party to recover costs.

It is so ordered.

ROSSMAN, BELT, and BEAN, JJ., concur.