Argued and submitted August 19, reversed and remanded to enter a new judgment on plaintiffs' first cause of action only December 7, 1981, reconsideration allowed, appellants' petition denied; respondent's petition allowed in part; and mandate modified to show neither party as the prevailing party in this court and disallowing costs to both parties March 22 (56 Or App 407, 642 P2d 318); petition for review allowed June 9, 1982 (293 Or 232)
See later issue Oregon Reports

## HAZEN et al,
### *Appellants,*

*v.*

## COOK,
### *Respondent,*

(No. 16-80-06719, CA 19800)

637 P2d 195

────────

Terence J. Hammons, Eugene, argued the cause for appellants. With him on the briefs was Hammons & Jensen, Eugene.

John C. Gartland, Eugene, argued the cause for respondent. With him on the brief was Jarvill, Jarvill, & Gartland, Eugene.

Before Buttler, Presiding Judge, and Richardson and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this action on a promissory note executed by defendants Cook and Richmond to collect the full amount of principal, together with interest at 11 percent per annum, costs and attorney fees. Defendant Cook[1] asserted an affirmative defense alleging the material elements of usury, including an allegation that plaintiffs had a "corrupt intent" to collect a rate of interest greater than that allowed by law. His motion for summary judgment on that ground was granted; the trial court dismissed plaintiffs' complaint and entered judgment against defendant Cook in favor of the state for the use of the Lane County School Fund[2] for the principal amount due on the note.

■ On appeal, plaintiffs assign error to the trial court's ruling on the grounds that (1) the promissory note was not a loan, but was a sale of securities exempt from the usury laws under former ORS 82.120(4),[3] and (2) there is a genuine issue of a material fact as to whether plaintiffs had a corrupt intent to charge more than the lawful rate of

---

[1] The promissory note at issue here was signed by defendants Richmond and Cook as joint and several obligors. Only defendant Cook was served with process and he is the only defendant involved in this appeal.

[2] Former ORS 82.120(5) (repealed Oregon Laws 1981, chapter 412) provided:

"(5) If it is ascertained in any action brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter in money, property or other valuable thing, or that any gift or donation of money, property or other valuable thing has been made or promised to be made to a lender or creditor, or to any person for the lender or creditor, either by the borrower or debtor, or by any person for the borrower or debtor, the design of which is to obtain for money so loaned or for debts due or to become due a rate of interest greater than that specified by the provisions of this chapter, it shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the county school fund of the county wherein such action is brought. The court in which such action is prosecuted shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, less all payments made by or for account of the borrower, against the defendant and in favor of the state for the use of the county school fund of the county, and against the plaintiff for costs of action."

[3] Former ORS 82.120(4) (repealed Oregon Laws 1981, chapter 412) provided:

"(4) This chapter does not apply to bona fide sales or resales of securities or commercial paper, nor does it apply to interest charges by broker-dealers registered under the Securities Exchange Act of 1934 for carrying a debit balance in an account for a customer if the debit balance is payable on demand and secured by stocks or bonds."

interest. The first issue was not, but could have been, raised below; we will not consider it for the first time on appeal. *State v. Kessler,* 289 Or 359, 371 n 17, 614 P2d 94 (1980); *Rafter Q Cattle v. Oregon Sun Ranch,* 51 Or App 27, 624 P2d 628, 52 Or App 719, 629 P2d 837, *rev den* 291 Or 708 (1981). For reasons stated below, we conclude that plaintiffs are wrong on their second contention. At oral argument, however, plaintiffs contended that the repeal of some of the usury laws which existed at the time the note in question was executed and at the time of trial (specifically ORS 82.120), and the amendment of others (specifically ORS 82.010[4]), by the 1981 Legislative Assembly apply retroactively to this transaction. That contention could not have been made in the trial court; we requested and received supplemental briefs on that question. We conclude that repeal of ORS 82.120(5), which worked a forfeiture of the entire debt, applies here and, therefore, reverse and remand for entry of a new judgment.

For purposes of this appeal, it is sufficient to state that in March, 1979, plaintiffs and Richmond formed a corporation known as Tinsnip, Ltd. It appears from the limited record that plaintiffs were the sole stockholders. Some months later, Richmond, who operated the business, informed plaintiffs that he and defendant Cook wanted to buy all of plaintiffs' stock in the corporation. An agreement was reached whereby 51 shares of Tinsnip stock were sold to defendant Cook and 49 shares to Richmond. Three notes evidencing the purchase price, or balance thereof, were executed by the purchasers, only one of which is in issue here. That note, signed by Richmond and Cook as joint and several obligors, was secured by Richmond's 49 shares of Tinship stock[5] and obligated the makers to pay plaintiffs

---

[4] Former ORS 82.010(2) (amended Oregon Laws 1981, chapter 412) provided:

"(2) On contracts, interest up to a maximum rate of 10 percent per annum may be charged upon express agreement of the parties."

[5] Even if we were to consider plaintiffs' contention that the transaction is exempt under former ORS 82.120(4)(n 3, *supra*) as a bona fide sale of securities, it might make a difference whether plaintiffs were selling the entire business by way of selling the stock, a fact which is not clear on this record. Further, it appears that the note here involved represented the price, or balance of the price, Richmond agreed to pay, because it was secured by the shares sold to Richmond. Whether the statutory exemption, even if it applies to the transaction, would

$7,380, together with interest thereon at the rate of 11 percent per annum. Defendants defaulted, and this action was commenced.

■ To constitute usury, the following elements must be established:

> "* * * [T]here must be (1) a loan, express or implied; (2) an understanding between the parties that the money lent shall or may be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid, or agreed to be paid, as the case may be; and (4) a corrupt intent to take more than the legal rate for the use of the sum loaned. * * *" *Balfour v. Davis,* 14 Or 47, 52, 12 P 89 (1886).

Plaintiffs' contention is that summary judgment was not proper, because the fourth element of usury, which requires a corrupt intent, is a genuine issue of material fact remaining to be resolved. In their affidavits opposing defendant's motion, they stated that they believed the maximum legal interest rate was 12 percent and, further, that they did not suggest the interest rate. Accordingly, they say, they did not possess the necessary corrupt intent to exact a usurious rate. Those facts, even if true, avail plaintiffs nothing.

In most cases alleging usury, the question of corrupt intent arose, if at all, where the instrument involved bore a legal interest rate on its face, but an additional charge was exacted from the debtor under another form, such as a "premium." *See Prudential Ass'n v. Stevens,* 144 Or 298, 14 P2d 196, 23 P2d 901 (1933); *Fidelity Sec. Corp. v. Brugman et al.,* 137 Or 38, 1 P2d 131 (1931); *Pacific Building Co. v. Hill,* 40 Or 280, 67 P 103 (1901); *Investment Association v. Stanley,* 38 Or 319, 63 P 489 (1901). In those cases, an inquiry was necessary to determine whether the additional charge was simply a camouflage for additional interest and, if so, whether the total interest charged exceeded the maximum rate permitted. If it did, the question of the "corrupt intent" of the creditor had to be established by the debtor to determine whether the transaction was usurious.

---

exempt this note from the usury laws where payment is sought against a co-maker, who is not the purchaser, is a question not addressed either in the trial court or this court.

If, however, as here, the note bears an illegal interest rate on its face, the requisite corrupt intent is presumed. It matters not that the creditor is ignorant of the law or that the debtor suggested the usurious rate. *Teshner v. Roome,* 106 Or 382, 210 P 160, 212 P 473 (1923). Accordingly, there is no genuine issue of material fact to be resolved here.

The remaining question is whether the legislature's enactment of Oregon Laws 1981, chapter 412, which, *inter alia,* amended ORS 82.010, raising the maximum legal interest rate from 10 percent to 12 percent, and repealed ORS 82.120, containing the forfeiture provision for usurious loans, has any effect on this case.

Defendant contends that, in the absence of a contrary intent,[6] the rule that statutes are presumed to operate prospectively should apply to prevent destruction or modification of the parties' legal rights and responsibilities under a transaction which arose prior to the enactment of the new legislation. *Held v. Product Manufacturing Company,* 286 Or 67, 71, 592 P2d 1005 (1979). With respect to the maximum rate of interest allowable, that contention has merit. However, the note, or the obligations of the maker, were not void under the former statutes; if defendant had paid the note, including the interest, he would not have been entitled to obtain repayment. At most, the provision for payment of usurious interest was voidable; it could be avoided by not paying it and by asserting the defense in a lawsuit. The obligation to pay the principal remained, in any event — that is, the principal amount of the debt was not even voidable. *See, generally, Crisman v. Corbin,* 169 Or 332, 128 P2d 959 (1942).

---

[6] We find nothing in the 1981 Act to indicate whether it is to operate retroactively or prospectively only. Defendant contends that the emergency clause indicates that the statute was intended to operate prospectively only. The only effect of that clause, however, is to make the legislation take effect immediately, rather than 90 days after the close of the legislative session. On the other hand, plaintiffs point out that section 23 of the Act specifically provides that certain sections "do not affect policies issued before the effective date of this act." It follows, they contend, that other sections were intended to apply retroactively. At first blush, that has merit; however, a reading of the sections involved suggest that the legislature wanted to be certain that life insurance loans made after the effective date on preexisting policies were not to be permitted to provide for an adjustable interest rate, as permitted under section 20 of the 1981 Act.

■ It is true, however, that under the former statutes defendant could avoid the payment of all interest, if the rate exceeded 10 percent, by asserting the defense of usury, as was done here. The right to do so is more akin to a substantive right than it is to a procedural one. Accordingly, we conclude that the increase in the maximum interest rate permitted to be charged does not apply to obligations incurred prior to the effective date of the 1981 amendments, and defendant may not now be required to pay any interest on the note.

The question of imposing on plaintiffs a forfeiture of the principal amount of the debt is a different matter. The former statute provided for a judgment in the form of a civil penalty on the usurious lender; he forfeited the loan to the state and was assessed with the costs of the proceeding. In short, it was penal in nature. *Crisman v. Corbin, supra,* 169 Or at 341; former ORS 82.120(5). It is apparent that the penalty of forfeiture was a matter of public policy adopted by the legislature to punish the lender; it did not aid the borrower, who was obligated to pay the principal amount to the state. That policy of forfeiture no longer exists, the statute having been repealed.

■ Because the public policy of the state imposing the penalty of forfeiture no longer exists, and because its repeal does not affect the rights or obligations of defendant, we see no reason to apply it here. We say that, even though the judgment below, when entered, applied the law as it then existed. In *Lambert Pharmacal Co. v. Roberts Bros.,* 192 Or 23, 30, 233 P2d 258 (1951), the Supreme Court quoted with approval the following language:

" 'In United States v. The Schooner Peggy, 1 Cranch, 103, the Supreme Court said at page 110, 2 L.Ed.49:

" ' "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied." ' "

The rule set forth in that quotation has been applied by this court where, subsequent to judgment and pending appeal, the legislature repealed and replaced the relevant statute.

*Jackson v. City of Portland,* 33 Or App 133, 576 P2d 21, *rev den* 283 Or 1 (1978).

Accordingly, the judgment of the trial court is reversed, and the case is remanded to enter a new judgment on the plaintiffs' first cause of action only to provide that plaintiffs recover from defendant Cook the sum of $7,380.