In re Gertrude Cecilia PLISS, Debtor.

Mildred A. WALKER, Plaintiff,

v.

Gertrude C. PLISS, Paul Landsdowne, and Jill Golden, Defendants.

Bankruptcy No. 682–07369.
Adv. No. 683–6088.

United States Bankruptcy Court,
D. Oregon.

Sept. 13, 1983.

David B. Mills, Eugene, Or., for plaintiff.

Donald E. Thies, Eugene, Or., for defendants.

Keith Y. Boyd, Eugene, Or., for Trustee.

## MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff, Mildred A. Walker, seeks relief from the automatic stay imposed by 11 U.S.C. § 362 to proceed with foreclosure of a trust deed secured by property of the debtor herein, Gertrude C. Pliss. The parties represented at trial that a sale of the subject property was pending which would be sufficient to satisfy plaintiff's interest. No such sale has materialized. The debtor, trustee, Paul Lansdowne, and Ms. Pliss' conservator, Jill Golden, assert a defense of usury and contend the debtor has sufficient equity in the property to constitute adequate protection of plaintiff's interest in the property.

The debtor signed a note in favor of plaintiff in the sum of $56,000.00 which was secured by a first trust deed on the subject property. Seven payments in the amount of $1,026.67 plus escrow collection fees were made on the note, the last payment made on September 3, 1981. On December 3, 1981, plaintiff commenced non-judicial foreclosure of the trust deed and the trustee's sale was scheduled for April 29, 1982. The sale was stayed when the debtor filed her voluntary Chapter 7 petition on April 28, 1982.

Evidence established that Ms. Pliss had allowed her unencumbered residence property to be used as collateral for a loan to a Mr. Les Glover, a debtor in another Chapter 7 case, who was a close acquaintance of the niece of Ms. Pliss. The transaction was arranged by a Mr. Jerry Wyatt of Master Mortgage Corporation (Master Mortgage) who was engaged in the business of bringing borrowers and lenders together. Defendant Pliss had allowed her property to be used as collateral for a prior loan made by Franko Oil to Mr. Glover which transaction had been arranged by Mr. Wyatt. Ms. Walker had loaned money to borrowers found by Mr. Wyatt on previous occasions. Mr. Glover contacted Master Mortgage to see if a loan could be arranged using Ms. Pliss' property as security, which then contacted plaintiff.

At the trial Ms. Pliss asserted that she had been over reached and not understood that her interest in her property was in jeopardy. The parties have not made this allegation an issue, and this is the second time such a transaction had been used by Mr. Glover and Mr. Wyatt to support a previous loan from another lender. Testimony of Lynne Clouse, a title company secretary, testified she fully explained the consequences to Ms. Pliss at the escrow closure.

The defendants' affirmative defense of usury is based upon ORS 82.010 et seq. Although these statutes were significantly modified or repealed by the Oregon Legislature in 1981, the maximum rate of interest allowable under them on December 31, 1980, the date upon which the parties entered into the transaction, remains applicable to the transaction. *Hazen v. Cook,* 55 Or.App. 66, 637 P.2d 195, 199 (1981). The interest limit of ten percent (10%) per annum applied to all loans in amounts less than $50,000.00. ORS 82.010(2), (4) (1979).

The note from Ms. Pliss to Ms. Walker for $56,000.00 is to bear interest at the rate of twenty-two percent (22%) per annum and included a fee to Master Mortgage in the amount of $7,400.00. The central issue in the usury defense in this case is whether the fee paid to Master Mortgage is properly considered interest on the loan to Ms. Pliss by Ms. Walker under the provisions of ORS 82.110(2) (1979), infra, thereby rendering the loan subject to the maximum allowable interest rate of 10% per annum should the loan itself then not be considered a loan in excess of $50,000.00.

ORS 82.110(2) (1979) provided:

"(2) If, pursuant to any arrangement, understanding or agreement, with the knowledge of the lender, either as a part of the contract of borrowing or collateral

thereto, regardless of when made and whether it is made as a special arrangement or in conformity to a regular rule, regulation or practice, there is paid by or at the expense of the borrower to the lender, his broker, officer, director or agent, any commission, bonus, fee, premium, penalty or other charge, compensation or gratuity, whether in money, credit or other thing of value, as a consideration, compensation or inducement for obtaining any loan, or any renewal, extension or forbearance thereof, the same shall be deemed a part of the interest charged on such loan within the meaning of this chapter."

■ The question is whether Mr. Wyatt was acting as Ms. Walker's agent in procuring the loan. The general rule is stated in 52 ALR2d 703, 710 as:

"It has generally been held or recognized that a lender cannot be charged with usury on account of any commission or bonus paid by the borrower to his own agent, or to any independent broker, for services in negotiating or procuring the loan."

Usury laws are not designed to protect a borrower from having to pay a commission to a third party who persuades the lender to make the loan. *Investment Funds Corp. v. Bomar,* 303 F.2d 592, 596 (5th Cir.1962). The court in *Investment Funds Corp. v. Bomar,* Id., elaborated on the purpose of statutes like ORS 82.110(2) (1979) at page 596:

"They are not designed to protect him from having to pay the legal rate for a loan plus a commission to a third party who persuades the lender to make the loan. In the latter case, the borrower pays for two things. First, he pays for the services of the third party, and second, for the loan itself. Where, however, the commission is paid to a party who is the agent of the lender *and who can control the actions of the lender,* it is not true that the borrower is paying for two distinct things. Since the agent, in such a case, need not persuade another to make the loan, but can himself make that decision, he has not performed any services for the borrower apart from the actual making of the loan. In that event, the commission paid to the agent *is for the loan itself,* and the amount of the commission can justly be added to the interest charged to determine whether the usury laws have been violated. [emphasis in original]"

The burden of proof is on the party alleging the agency relationship. *Mills v. State National Bank,* 28 Ill.App.3d 830, 329 N.E.2d 255 (1975).

■ Mr. Wyatt was in the business of bringing borrowers and lenders together and in such capacity acts to some extent as an agent for both borrowers and lenders. However, the facts of this case indicate Mr. Wyatt was an independent broker and not the sole agent of Ms. Walker. Ms. Pliss had signed an agency agreement with Mr. Wyatt and received the benefit of obtaining the loan for Mr. Glover.

Ms. Walker received no portion of the broker fee. There is no evidence to show that she knew what the charge was or how it was paid. It was clearly not a device for collection of additional interest as where the charge is made by the lender. Plaintiff had no pre-arrangement with Master Mortgage that permitted it to commit funds on her behalf. She parted with $56,000.00 cash and received a secured obligation to repay that $56,000.00 with interest. Not knowing the amount of the broker fee it was impossible for her to know whether the loan was subject to the interest rate limitation.

If the fact that a loan is usurious is not apparent from the face of the documents (in which case "corrupt intent" is presumed) then it must be established that the "additional charge" paid by the borrower was simply a camouflage for additional interest and, if so, whether the total interest charged exceeded the maximum rate permitted. *Hazen v. Cook,* supra 637 P.2d at 198. The loan herein is not usurious on the face of the documents. No "corrupt intent" on the part of Ms. Walker has been established.

The Court finds that the amount of the loan to Ms. Pliss by Ms. Walker exceeded $50,000.00 in amount and pursuant to ORS 82.010(4) (1979) is not subject to the 10% per annum maximum allowable interest limitation in ORS 82.010(2) (1979) and is therefore not usurious.

 Ms. Pliss has continued to reside on the subject property and has made no payment to plaintiff since September 3, 1981. Since commencement of foreclosure, Ms. Pliss has not maintained fire and casualty insurance on the property. Plaintiff has paid for such insurance, including a payment of $199.00 on July, 1982. There are currently 1981–82 and 1982–83 real property taxes owing against the property in the total amount of $1,626.06, together with interest from February 2, 1983. The total outstanding indebtedness from defendant Pliss to plaintiff now exceeds $80,000.00 under the terms of the trust deed and note.

Defendants offer plaintiff no adequate protection aside from Ms. Pliss' equity in the property which defendants claim exists. The only testimony of value came from Ms. Pliss who testified that the property has a barn on it and that she bought the property for $16,000.00 in 1975 after which she built and improved a house and she believed the value of the property at the time of trial to be $128,000.00. The property was listed for sale at that amount but she had been unable to sell it for that amount. The sale the parties represented was pending was for $99,000.00, but it has not been consummated.

It is apparent that any equity Ms. Pliss has in the property is at best small and diminishing rapidly. In the absence of additional adequate protection the plaintiff cannot be expected to wait until her obligation exceeds the value of the collateral. Accordingly, plaintiff is granted relief from the automatic stay to foreclose its interest. This relief will be stayed for 30 days from the date of this Memorandum Opinion and separate Judgment to enable defendants to close any sale of the property in an amount sufficient to satisfy the interests of the plaintiff. Separate Judgment consistent herewith will be issued. This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 7052 they will not be separately stated.